IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BERNEDETTE ROLEN, AS MOTHER AND AS ADMINISTRATIX OF THE ESTATE OF DANIEL FICKER, et al., | ) ) ) ) | CASE NO. 1:12-CV-01914 |
| | ) | JUDGE SOLOMON OLIVER |
| *Plaintiffs*, | ) ) | |
| -vs- | ) ) | **DEFENDANT CITY OF CLEVELAND'S MOTION** |
| CITY OF CLEVELAND, et al., | ) ) | **TO DISMISS** |
| *Defendants*. | ) ) | |

Defendant City of Cleveland respectfully moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing plaintiffs' complaint against the City of Cleveland for failure to state a claim upon which relief may be granted. Of the eight claims asserted by plaintiffs, six of those claims (claims two, four, five, six, seven, and eight) apply to the City. A memorandum in support of this motion is attached and expressly incorporated.

                                            Respectfully submitted

                                            BARBARA A. LANGHERNY
                                            Interim Director of Law

            By:    <u>s/ Alejandro V. Cortes</u>
                  SHAWN M. MALLAMAD (0011398)
                  Assistant Director of Law
                  ALEJANDRO V. CORTES (0079806)
                  Assistant Director of Law
                  City of Cleveland Department of Law
                  601 Lakeside Avenue, Room 106
                  Cleveland, Ohio 44114-1077
                  Tel: (216) 664-2800   Fax: (216) 664-2663
                  Email:  SMallamad@city.cleveland.oh.us
                               ACortes@city.cleveland.oh.us

                  *Counsel for Defendant City of Cleveland*

# MEMORANDUM IN SUPPORT

Defendant City of Cleveland ("City") respectfully submits the following Memorandum in Support of its Motion to Dismiss.

## I. FACTS AND STATEMENT OF THE CASE

Plaintiffs Bernadette Rolen, the mother of Daniel Ficker and Administratix of his estate, and Tiffany Urbach, Ficker's girlfriend and the mother his children, commenced this case on July 3, 2012 in the Cuyahoga County Court of Common Pleas by filing a complaint naming the City of Cleveland, Matthew Craska, and David Mindek as defendants. Plaintiffs allege: (1) 42 U.S.C. §1983 claims against Craska and Mindek (First Claim), and the City (Second Claim); (2) willful, wanton, and reckless conduct as to Craska and Mindek (Third Claim); and (3) assault and battery (Fourth Claim), false arrest (Fifth Claim), infliction of emotional distress[1] (Sixth Claim), wrongful death (Seventh Claim), and survivorship (Eighth Claim) claims against all defendants. Because the complaint alleged both state and federal claims, the City timely filed a Notice of Removal of the lawsuit to this Court on July 24, 2012.

Plaintiffs allege the following facts that the City will assume are true for purposes of this motion only: On July 3, 2011, Daniel Ficker, Tiffany Urbach, and their two children attended a Fourth of July party at the home of Kimberly Mindek.[2] Kimberly Mindek is Urbach's cousin and the wife of David Mindek.[3] David Mindek is a police officer for the City of Cleveland who was on duty and not at home during the party.[4]

---

[1] The complaint is not clear as to whether the plaintiffs are alleging intentional infliction of emotion distress and/or negligent infliction of emotional distress claims. For the sake complete briefing, the City will address the plaintiffs' "infliction of emotional distress claim" as alleging both intentional and negligent infliction of emotional distress.
[2] [ECF Doc. 1-1], *Complaint*, at ¶10.
[3] *Id.,* at ¶10, ¶11.
[4] *Id.,* at ¶6, ¶11.

2

Ficker, Urbach, and their children left the Mindek party in the late afternoon and went to spend time with Urbach's parents at their home in Strongsville, Ohio.[5]

After the party was over, Kimberly Mindek suspected that Ficker stole jewelry from an upstairs bedroom while he was at the party.[6] Kimberly Mindek conveyed her suspicion to her husband who had arrived home after completing his assigned shift as a patrol officer.[7] David Mindek decided to take the matter of the suspicion into his own hands and enlisted the assistance of Matthew Craska in order to confront Ficker at his home in Parma, Ohio.[8] Craska is also a police officer for the City of Cleveland who was on-duty and assigned to the Second District area of Cleveland.[9]

At approximately 11:30 p.m. on July 3, 2011, Craska left his duty assignment in the near westside of Cleveland, picked up David Mindek in his police cruiser, and drove to Ficker and Urbach's home.[10] Craska and David Mindek arrived at the residence and waited for Ficker and Urbach to arrive home.[11] Flicker and Urbach left her parent's home leaving behind their children to spend the night with her parents.[12] Ficker and Urbach stopped at a local bar before proceeding to their Wareham Road home.[13]

Ficker and Urbach arrived home and parked their car in the driveway, exited the vehicle, and proceeded to side door of their house.[14] As they were making their way toward the side door, Urbach saw a police car and noticed David Mindek in civilian clothes standing in the

---

[5] *Id.,* at ¶12.
[6] *Id.,* at ¶13.
[7] *Id.,* at ¶15.
[8] *Id.*
[9] *Id.,* at ¶5, ¶15.
[10] *Id.,* at ¶16.
[11] *Id.,* at ¶17.
[12] *Id.,* at ¶18.
[13] *Id.,* at ¶19.
[14] *Id.,* at ¶20.

vicinity, as well as a uniformed police officer determined later to be Craska.[15] David Mindek and Craska then confronted Ficker; they forced him face first onto the hood of Craska's police cruiser, began to handcuff him, and proceeded to beat and electronically shock him.[16] Ficker cried for help and attempted to thwart the blows and assault to his body.[17] Ficker was able to break free, put his hands in the air to show that he was unarmed, and attempted to enter the side door of his house when Craska fired a shot from his handgun striking Ficker in the side of his chest.[18] Ficker died as a result of the gunshot wound.[19]

> With respect to plaintiffs' §1983 claim against the City, they allege that the City's:
>
> [F]ailure to provide adequate training and controls relative to its officers' authority to leave their jurisdiction and city to assist an off duty officer on a personal matter relating to perceived suspicions of criminal conduct affecting the off duty officer, and further skirting appropriate investigative procedures, constitutes reckless and indifference to constitutional safeguards and protections. This breakdown in the chain of command and condoning of unethical and dangerous police intervention predictably and/or directly led to the unconstitutional arrest, beating, and shooting of Daniel Ficker. Such abuse of authority in acquiescing or authorizing Craska to leave the Second District and go to Parma to engage in a confrontation regarding a personal matter without any imminency or basis, calls into question the policy of granting unfettered discretion to supervisors to acquiesce in such an abuse of authority, and certainly *infers a lack of training*.[20]

Plaintiffs further allege that the conduct of Mindek and Craska "demonstrates a deliberate indifference to notions of probable cause and legal detentions, *and infer a policy of inadequate training of these officers in proper police tactics relating to the routine calls and engagement with citizens*."[21] And the City, plaintiffs allege, failed to adequately train and supervise its

---

[15] *Id.*
[16] *Id.,* at ¶21.
[17] *Id.,* at ¶22.
[18] *Id.,* at ¶24.
[19] *Id.,* at ¶28.
[20] *Id.,* at ¶37. (Emphasis added.)
[21] *Id.,* at ¶38. (Emphasis added.)

4

patrolmen and failed to institute adequate policies and procedures "governing jurisdictional authority, probable cause to make arrests, and the use of deadly force."[22]

With respect to the other claims asserted against the City, the complaint alleges that "[d]efendants knowingly caused physical harm by the use of both non-deadly and deadly force"[23] (assault and battery); that the "[d]efendants, without legal justification, intentionally and unlawfully falsely arrested the plaintiffs' decedent"[24] (false arrest); and that the "[d]efendants either intended to cause … emotional distress or knew or should have known that their actions or inactions would result in serious emotional distress."[25]

As detailed below, the complaint fails to satisfy the pleading requirements of Civil Rule 8 as those requirements have been interpreted by the U.S. Supreme Court.[26] The complaint sets forth only the most general, conclusory allegations against the City and fails to demonstrate a plausible right of recovery on all claims asserted against the City. Therefore, the complaint should be dismissed for failure to state a claim upon which relief may be granted.

## II. LAW AND ARGUMENT

### A. Standard of Review

The United States Supreme Court has clarified the standard that a trial court applies when evaluating a complaint under a Rule 12(b)(6) motion to dismiss. In *Bell Atlantic Corporation v. Twombly*, the Supreme Court rejected the *Conley v. Gibson* standard that requires there to be "no set of facts" that would entitle the plaintiff to relief.[27] The Supreme Court noted that while the pleading standard in Civil Rule 8 does not require detailed factual allegations, it does demand

---

[22] *Id.,* at ¶39, ¶40.
[23] *Id.,* at ¶46.
[24] *Id.,* at ¶49.
[25] *Id.,* at ¶53.
[26] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 566 U.S. 662 (2009).
[27] *Twombly,* 550 U.S. at 544.

5

more than an unadorned, "the defendant unlawfully harmed me" accusation. A pleading that offers "labels and conclusions" or a "formulaic recitation of elements of a cause of action will not do."[28] Rather, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[29] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."[30] Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown "that the pleader's entitled to relief."[31]

Here, the complaint fails to show an entitlement to relief against the City. The complaint is devoid of any specific operative facts as to the City that would demonstrate any plausible right of recovery. Plaintiffs offer no operative facts to support their legal conclusion that the City failed to train and supervise and failed to institute adequate policies and procedures regarding: the authority of patrolmen to leave the city, with permission, to investigate allegations of criminal conduct; the use appropriate investigative procedures; proper police tactics relating to routine calls and engagement with citizens; probable cause to make arrests; and the use of deadly force. In addition, the complaint fails to allege operative facts showing that the City could be held liable for assault and battery, false arrest, infliction of emotional distress, wrongful death, and survivorship. As such, plaintiffs' claims against the City are nothing more than a formulaic recitation of elements of a cause of action that the Supreme Court has determined to be insufficient.

---

[28] *Iqbal,* 566 U.S. at 678.
[29] *Twombly,* 550 U.S. at 570.
[30] *Id.,* at 557.
[31] Fed. R. Civ. Pro. 8(a)(2).

6

**B. Plaintiffs' failure to train and supervise/failure to institute adequate policies and procedures claim lacks sufficient factual allegations necessary to state a plausible right to recovery.**

Plaintiffs bear the burden of proving that the City "itself" caused the constitutional violation. A municipality cannot be held liable for the unconstitutional actions of its employees under a theory of *respondeat superior*.[32] Instead, a plaintiff seeking to establish municipal liability under §1983 must "identify conduct properly attributable to the municipality itself."[33] A plaintiff "must show that the municipal action was taken with the requisite degree of culpability."[34] "A showing of deliberate indifference requires a showing of something more culpable … than a negligent failure to recognize [a] high risk of harm."[35] Further, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of constitutional rights."[36] Plaintiff must demonstrate that, through the City's deliberate conduct, the unconstitutional conduct of the City itself was the moving force behind the injury alleged.[37]

The Sixth Circuit has formulated a three-part test which requires that "[t]o succeed on a failure to train or supervise claim [under a §1983 theory], a plaintiff must prove the following:

(1) The training or supervision was inadequate for the tasks performed;
(2) The inadequacy was the result of the municipality's deliberate indifference; and
(3) The inadequacy was closely related to or actually caused the injury."[38]

---

[32] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), (citing *Monell v. Department of Soc. Servs. of City of New York* 436 U.S. 658 (1978)).
[33] *Cherrington v. Skeeter,* 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).
[34] *Id*.
[35] *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912 (6th Cir. 1995) (quoting *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 712-12 (3d Cir. 1993) (internal citations omitted*). See also, Lewis v. City of Irvine, Kentucky*, 899 F.2d 451, 455 (6th Cir. 1990) (It does not suffice "to prove that an injury or accident could have been avoided if [the employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").
[36] *Cherrington,* 344 F.3d at 645, (quoting *Board of Cty. Comm'rs of Bryan Cty.,* 520 U.S. at 404).
[37] *Id.*
[38] *Ellis v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006); *Cabaniss v. City of Riverside*, 231 Fed.Appx. 407, 416, 2007 WL 1047588 (6th Cir. April 6, 2007).

In order to make this showing, the Sixth Circuit has held that this standard requires that a "[p]laintiff ... do more than point to something the city could have done to prevent the unfortunate incident."[39]

In this case, the complaint alleges that the City failed to train and supervise and failed to institute adequate policies and procedures regarding: the authority of patrolmen to leave the city, with permission, to investigate allegations of criminal conduct; the use appropriate investigative procedures and proper police tactics relating to routine calls and engagement with citizens; probable cause to make arrests; and the use of deadly force.

For the reasons stated below, plaintiffs' failure to train and supervise/failure to institute adequate policies and procedures claim against the City does not satisfy the requirements of *Twombly* and *Iqbal* and should be dismissed for failure to state a claim upon which relief may be granted.

> 1. **Plaintiffs have not alleged sufficient facts demonstrating that the City failed to train and supervise/failed to institute adequate policies and procedures regarding instances of police officers leaving his or her jurisdiction to investigate allegations of criminal conduct.**

The alleged "policies" at issue here are instances where a police officer leaves his or her jurisdiction and city, with permission, in order to investigate allegations of criminal conduct, the use of appropriate procedures to investigate that alleged criminal conduct, and proper police tactics when confronting the suspect of that alleged criminal conduct. When analyzed under the Sixth Circuits' three-part failure to train test, plaintiffs' allegations fail to show how the training and/or policies are inadequate and that the inadequacy was the result of the City's deliberate indifference.

---

[39] *Kahlich v. City of Grosse Pointe Farms,* 120 Fed.Appx. 580, 585 (6th Cir. 2005) (citing *City of Canton,* 489 U.S. at 392 (1989)).

To begin with, there is nothing unconstitutional about officers leaving his or her jurisdiction or city, with permission, to investigate a crime. In fact, plaintiffs certainly allege as much when they characterizes this type of conduct as "an unethical and dangerous police intervention."[40] Where the policy itself is not unconstitutional, "considerably more proof than the single incident will be necessary in every case to establish ... the requisite fault on the part of the" governmental body.[41]

In this case, allegations that officers Mindek and/or Craska's left the city to investigate alleged criminal conduct, skirted appropriate investigative procedures, and proper police tactics thereby *inferring* a policy of inadequate training is a conclusory statement devoid of factual support. Plaintiffs offer no facts whatsoever demonstrating how the City's training and/or policy about leaving the city to investigate a crime, the investigation of the alleged criminal conduct and the engagement of suspects is inadequate. Without sufficient factual allegations regarding the "how," the Court cannot infer a policy of inadequate training. In fact, the complaint fails to demonstrate how the allegedly inadequate "policies" at issue here are city-wide instead of specific to the individual officers.[42] Even if the allegations establish how the alleged "policies" at issue are inadequate, which they do not, they also fail because they do not establish deliberate indifference on the part of the City.

To establish "deliberate indifference" "a plaintiff must show prior instances of unconstitutional conduct demonstrating that the City has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."[43] The only operative facts pertinent to this aspect of plaintiffs' claim are the allegations

---

[40] [ECF Doc. 1-1], *Complaint,* at 37.
[41] *Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985).
[42] *See, City of Canton,* 489 U.S. at 390-391
[43] *Plinton v. County of Summit,* 540 F.3d 459, 464 (6th Cir 2008) (citation omitted).

9

that at approximately 11:30 p.m. on July 3, 2011, officer Craska left his duty assignment in the near westside of Cleveland, picked up officer Mindek in his police cruiser, and based on unsubstantiated suspicions, drove to Ficker and Urbach's home.[44] This allegation falls short of demonstrating deliberate indifference because in order to plead a §1983 claim based on a failure to train sufficient to withstand a Rule 12(b)(6) motion post *Twombly* and *Iqbal*, a plaintiff must plead more facts than those that constitute the alleged underlying constitutional violation.[45]

Here, the complaint is devoid of allegations of prior instances of such conduct of which the City had prior knowledge and failed to investigate. Plaintiffs have pled facts concerning only a single set of allegedly wrongful acts towards the decedent, not a policy or custom of inadequate training or supervision. Again, plaintiffs' are asking this Court to make impermissible inferences based solely on one set of allegedly wrongful acts toward the decedent. These allegations fall short of stating a plausible right to recovery, and it is apparent that plaintiffs are attempting to infer a City-wide policy based solely on one instance of potential misconduct which would effectively be holding the City liable on a *respondeat superior* theory.

Accordingly, plaintiffs §1983 claim against the City is nothing more than an unadorned "the defendant unlawfully harmed me" accusation that is a formulaic recitation of elements necessary to prove their claim and should be dismissed for failure to state a claim upon which relief may be granted.

---

[44] [ECF Doc. 1-1], *Complaint,* at ¶16, ¶17.
[45] *See, e.g., Hill v. City of Cincinnati,* No. 1:09-CV-800, 2010 WL 3257725, at *5 (S.D. Ohio Jul.16, 2010) (dismissing claim against the city where the plaintiff pleaded "only facts [that] ... relate to her individual circumstances"), *report and recommendation adopted by,* 2010 WL 3257727 (S.D. Ohio Aug. 17, 2010) (attached as Ex. A); *Scrap Yard, LLC v. City of Cleveland,* No. 1:10-CV-2465, 2011 WL 3900571, at *4 (N.D. Ohio Sep. 6, 2011) (dismissing claims that were "founded on 'a single set of allegedly wrongful acts'" "rather than on "violations [that] occurred pursuant to the City of Cleveland's policy or custom'") (attached as Ex. B).

**2. Plaintiffs' failure to train and supervise/failure to institute adequate policies and procedures claim regarding probable cause to make arrests should be dismissed because the complaint does not allege facts demonstrating that the decedent was arrested.**

Plaintiffs' failure to train/institute adequate policies claim regarding probable cause to make arrests fails for the simple reason that the complaint does not allege that the decedent was arrested by officers Mindek and/or Craska. At most, the complaint alleges that officers Mindek and/or Craska attempted to arrest the decedent. Without a constitutional violation, a court cannot impose liability upon a municipality under §1983. In *City of Los Angeles v. Heller*, the United States Supreme Court held that a municipal entity cannot be liable on a §1983 cause of action where there was no underlying constitutional violation by the individual officer. [46]

Here, the complaint only alleges that officers Mindek and/or Craska began to handcuff the decedent;[47] that he was able to break free, put his hands in the air to show he was unarmed, and attempted to get in the side door of his house.[48] These factual allegations do not show, nor can one infer that officers Mindek and/or Craska arrested the decedent. In order "to assert a successful Fourth Amendment claim, the plaintiff must first show that there was a seizure."[49] "A Fourth Amendment seizure occurs when a police officer restrains the liberty of a citizen in such a way that a reasonable citizen would reasonably believe under the circumstances that he or she was not free to leave."[50] There is no seizure without actual submission.[51]

The facts demonstrate that the decedent resisted officers Mindek and/or Craska's attempts to handcuff him, that he broke free, and attempted to enter his home. Based on the facts as alleged by plaintiffs, one cannot infer that the decedent reasonably believed that he was not

---

[46] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curium*).
[47] [ECF Doc. 1-1], *Plaintiffs' Complaint,* at ¶21.
[48] *Id.,* at ¶24.
[49] *Ewolski v. City of Brunswick,* 287 F.3d 492, 506 (6th Cir. 2002).
[50] *Id.* (citing *Michigan v. Chesternut,* 486 U.S. 567, 573 (1988)).
[51] *Brendlin v. California,* 551 U.S. 249, 254 (2007).

free to leave under the circumstances. There is no allegation that the decedent submitted to officers Mindek and/or Craska.

Accordingly, plaintiffs claim regarding probable cause to make arrests should be dismissed for failure to state a claim upon which relief may be granted because the decedent was never arrested.

### 3. The Complaint does not allege sufficient facts demonstrating that the City failed to train and supervise its police officers/failed to institute adequate policies and procedures relative to the use of deadly force.

The complaint alleges that officer Craska shot and killed the decedent.[52] There are no allegations that officer Mindek had any part in the shooting and death of the decedent. Because of Craska's conduct, plaintiffs conclude that the City failed to train and supervise patrol officers and failed to institute adequate policies and procedures on the use of deadly force. This legal conclusion is not entitled to the assumption of truth.[53] The complaint offers no explanation, by way of factual allegations, as to how the City's use of deadly force policy is inadequate; and how the inadequate training on the use of deadly force is systemic and city-wide instead of specific to officer Craska. As the Supreme Court explained in *City of Canton v. Harris*,

> "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the City, for the officer's shortcomings may have resulted from factors other than a faulty training program." "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."[54]

Post *Twombly* and *Iqbal*, plaintiffs' are required to do more than just conclude without sufficient factual allegations that the City's use of deadly force policy and training is inadequate. The estate must allege how that policy and training is deficient; how "the unconstitutional

---

[52] ECF Doc. 1-1], *Plaintiffs' Complaint,* at ¶24, ¶28.
[53] *Iqbal,* 566 U.S. at 678.
[54] *City of Canton,* 489 U.S. at 390-391.

conduct of the City itself was the moving force behind the injury alleged."[55] There mere allegation that officer Craska shot and killed the decedent does not infer an inadequate use of deadly force training and/or policy that imposes §1983 liability on the City.

### C. Plaintiffs' state law claims should be dismissed because they fail to state a claim upon which relief may be granted.

#### 1. As a matter of law, the City cannot be held liable for the intentional torts committed by its employees.

It is well settled that an employer may not be held liable for the intentional or malicious acts of the employee.[56] In this case, the complaint alleges assault and battery, false arrest, and intentional infliction of emotional distress claims against the City. Each of those claims is an intentional tort under which the City cannot be held liable as a matter of law. Even if the City is liable for the intentional torts of its employees, which it is not, the City would still be entitled to statutory immunity from plaintiffs' intentional tort claims under R.C. Chapter 2744.

#### 2. The City is entitled to statutory immunity pursuant to R.C. Chapter 2744

The City of Cleveland, like all Ohio political subdivisions, is generally immune from claims brought concerning its performance of a governmental function.[57] R.C. 2744.01(C) recognizes "[t]he provision or nonprovision of police … services or protection," as a governmental function for which a municipality is entitled to immunity.[58] A political subdivision can be liable in tort only in a limited number of circumstances where an exception to

---

[55] *Cherrington,* 344 F.3d at 645, (quoting *Board of Cty. Comm'rs of Bryan Cty.,* 520 U.S. at 404).
[56] *Amato v. Heinika Ltd.,* 8th Dist. No. 84479, 2005 WL 110441, 2005-Ohio-189, ¶4 (attached as Ex. C).
[57] R.C. § 2744.02(A)(1).
[58] R.C. §2744.01(C)(2)(a); *Maddox v. City of East Cleveland,* 8th App. Dist. No. 96390, 2012 WL 20134, 2012-Ohio-9 ("The operation of a police department is a governmental function … so the city is presumptively immune from suit") (attached as Ex. D); *Griffits v. Newburgh Hts.,* 8th App. Dist. No. 91428, 2009 WL 280376, 2009-Ohio-493 (appellate court reversed denial of motion for judgment on the pleadings holding village immune from arrestees' intentional tort claims) (attached as Ex. E).

this general immunity applies. The enumerated exceptions to a municipality's immunity are as follows:

(1) Negligent operation of motor vehicles by municipal employees;
(2) Negligent acts with respect to proprietary functions;
(3) Failure to keep public roads free from nuisance;
(4) Negligence of municipal employees within or on grounds of public buildings; and
(5) When liability is expressly imposed upon a municipality by the Revised Code.[59]

Once a court finds that none of the provisions of R.C. 2744.02(B)(1)-(5) apply, the political subdivision will be shielded from the act or omission of its employees, whether the act or omission is wanton, reckless, or negligent in nature.[60]

Finally, if one of the R.C. 2744.02(B) exceptions to immunity does apply, a court needs to determine if any of the additional defenses available pursuant to R.C. 2744.03 restores the political subdivision's immunity.

As alleged by the plaintiffs, the conduct of both officers Mindek and Craska with respect to the incident in question relate to the provision or nonprovision of polices services and protection,[61] and therefore both officers were engaging in a governmental function that entitles the City to statutory immunity. In addition, as will be detailed below, none of the enumerated exceptions to liability apply to defeat the City's grant of statutory immunity, and the Court need not address the third step in the statutory immunity analysis. As such, plaintiffs' state law claims should be dismissed pursuant to R.C. Chapter 2744.

---

[59] R.C. §2744.02(B)(1)-(5).
[60] *See, Wilson v. Stark Cty. Dept. of Human Serv.,* 70 Ohio St.3d 450, 452 (1994) (a political subdivision retains its cloak of immunity from lawsuits stemming from employees' negligent or reckless acts).
[61] *McCloud v. Nimmer,* 72 Ohio App.3d 533 (8th Dist.1991) (city not liable for alleged failure to properly train officer); *Hall-Pearson v. City of South Euclid,* 8th Dist., No. 73429, 1998 WL 703390,*4 (Oct. 8, 1998) (city immune from alleged failure to train police) (attached as Ex. F).

### a. The City has statutory immunity from the plaintiffs' intentional tort claims.

Plaintiffs have alleged no facts to support the application of any of these five exceptions to their intentional tort claims—assault and battery, false arrest, and intentional infliction of emotional distress. In fact, none of the exceptions apply to the facts of this case. Courts have consistently held that political subdivisions are immune from intentional tort claims.[62]

### i. The City has statutory immunity from plaintiffs' assault and battery claim.

In order to establish the tort of assault, a plaintiff must show that the defendant willfully threatened or attempted to harm or offensively touch the plaintiff and that the threat or attempt reasonably placed the plaintiff in fear of such contact.[63] In addition, for a complaint to sound in battery, the essence of the act complained of must be an intentional, offensive touching.[64] Because plaintiffs' assault and battery claim is an intentional tort where none of the enumerated exceptions to immunity apply, the City is entitled to statutory immunity.

### ii. The City has statutory immunity from plaintiffs' false arrest claim.

Under Ohio law, a false arrest claim is made by establishing two elements: 1) the intentional detention of the person, and 2) the unlawfulness of the detention.[65] Because plaintiffs' false arrest claim is an intentional tort where none of the enumerated exceptions to immunity apply, the City is entitled to statutory immunity. Moreover, plaintiffs' false arrest

---

[62] *See, e.g., Thornton v. City of Cleveland,* 176 Ohio App.3d 122, 2008-Ohio-1709, ¶6; *Young v. Genie Indus. United States,* 8th Dist. No. 89665, 2008 WL 603036, 2008-Ohio-929, ¶12 (attached as Ex. G).
[63] *Stafford v. Columbus Bonding Ctr.,* 177 Ohio App.3d 799, 2008-Ohio-3948, ¶15.
[64] *Anderson v. St. Francis–St. George Hosp., Inc.,* 77 Ohio St.3d 82, 84 (1996) ("battery requires proof of an intentional, unconsented to touching"); *Snyder v. Turk,* 90 Ohio App.3d 18, 23 (2d Dist. 1993) (a battery is an "intentional, unconsented-to contact with another").
[65] *See, e.g., Barnes v. Meijer Dept. Store,* Butler App. No. CA2003–09–246, 2004 WL 720906, 2004–Ohio–1716, ¶15 (attached as Ex. H); *Harvey v. Republic Svcs. of Ohio,* Stark App. No.2007 CA 00278, 2009 WL 765516, 2009–Ohio–1343, ¶40 (attached as Ex. I).

claim also fails for the simple reason that they did not allege facts demonstrating that officers Mindek and/or Craska arrested the decedent.

      **iii.**  **The City has statutory immunity from plaintiffs' intentional infliction of emotional distress claim.**

To state a claim for intentional infliction of emotional distress, a plaintiff must show that the defendant intentionally or recklessly caused severe emotional distress through extreme and outrageous conduct.[66] Because plaintiffs' intentional infliction of emotional distress claim is an intentional tort where none of the enumerated exceptions to immunity apply, the City is entitled to statutory immunity.

    **b.**  **The City has statutory immunity from the plaintiff's remaining state law claims.**

      **i.**  **The City has statutory immunity from plaintiffs' negligent infliction of emotional distress claim.**

Under the statutory framework outlined above, the City is entitled to statutory immunity on plaintiffs' negligent infliction of emotional distress claim. Plaintiffs' negligent infliction of emotional distress claim arises for the provision of police services, a governmental function that entitles the City to statutory immunity. Here, the complaint does not allege facts demonstrating that any of the five enumerated exceptions to governmental immunity apply, and none apply to the facts of this case.[67]

---

[66] *Baghani v. Charter One Bank F.S.B.,* 8th Dist. No. 91373, 2009 WL 280399, 2009-Ohio-490, ¶21 (attached as Ex. J).
[67] *Maggio v. City of Warren,* Trumbull App. No.2006-T-0028, 2006 WL 3772258, 2006-Ohio-6880 (finding immunity for intentional and negligent infliction of emotional distress claims) (attached as Ex. K).

### ii. The City has statutory immunity from plaintiffs' wrongful death and survivorship claims.

Under the statutory framework outlined above, plaintiffs' wrongful death and survivorship claims fail as a matter of law because the City is entitled to statutory immunity. Plaintiffs' wrongful death and survivorship claims arise from the provision police services, a governmental function that entitles the City to statutory immunity. Here, the complaint does not allege facts demonstrating that any of the five enumerated exceptions to governmental immunity apply, and none apply to the facts of this case.[68]

Accordingly, the City is entitled to statutory immunity on all of the state law claims asserted against it because a complaint that suggests a theory of recovery that is clearly barred by R.C. Chapter 2744 immunity does not demonstrate a plausibility of recovery and cannot survive a motion to dismiss.

---

[68] *See, Cabaniss,* 231 Fed. Appx. at 417 (dismissing wrongful death and survivorship claims against a municipality in a police excessive-force case, stating "Section 2744.02 immunity clearly applies to the City of Riverside").

**III. CONCLUSION**

For the reasons stated above, defendant City of Cleveland respectfully moves this Court to grant its Motion to Dismiss and dismiss plaintiffs' complaint against the City of Cleveland with prejudice.

                                        Respectfully submitted

                                        BARBARA A. LANGHERNY
                                        Interim Director of Law

                        By:    s/ Alejandro V. Cortes
                                 SHAWN M. MALLAMAD (0011398)
                                 Assistant Director of Law
                                 ALEJANDRO V. CORTES (0079806)
                                 Assistant Director of Law
                                 City of Cleveland Department of Law
                                 601 Lakeside Avenue, Room 106
                                 Cleveland, Ohio 44114-1077
                                 Tel: (216) 664-2800   Fax: (216) 664-2663
                                 Email:  SMallamad@city.cleveland.oh.us
                                              ACortes@city.cleveland.oh.us

                                 *Counsel for Defendant City of Cleveland*

## CERTIFICATE OF SERVICE

I certify that on September 7, 2012, a copy of this **Motion to Dismiss and Memorandum in Support** was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Alejandro V. Cortes*
SHAWN M. MALLAMAD (0011398)
ALEJANDRO V. CORTES (0079806)

*Counsel for the Defendant City of Cleveland*