UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BERNADETTE ROLEN, Administratrix of the Estate of Daniel Ficker, *et al.*, | ) ) ) | Case No.: 1:12 CV 1914 |
| Plaintiffs | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| CITY OF CLEVELAND, *et al.*, | ) ) | |
| Defendants | ) | <u>ORDER</u> |

Bernadette Rolen, in her capacity as administratrix of the estate of Daniel Ficker, and Tiffany Urbach, Ficker's girlfriend (together, "Plaintiffs") brought the above-captioned action against City of Cleveland (the "City"), Matthew Craska, and David Mindek (together, "Defendants"), seeking compensatory and punitive damages, equitable relief and attorney's fees. In their Complaint, Plaintiffs allege that Defendants deprived Ficker of his constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution; that Defendant City of Cleveland failed to train, monitor and supervise its officers, and failed to implement adequate policies to instruct its officers on constitutional limitations; and several violations of Ohio law. (Compl. at ¶¶ 30-67, ECF No. 1-1.) Defendant seeks dismissal of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ( Def.'s Mot. to Dismiss, ECF No. 6.) For the following reasons, Defendant's Motion is hereby granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Bernadette Rolen ("Rolen") is the mother and administratrix of the estate of Daniel Ficker ("Ficker"), and resides in the City of Oldmsted Falls, Cuyahoga County, Ohio. (Compl. at ¶ 3.) Plaintiff Tiffany Urbach[1] ("Urbach") was Ficker's girlfriend until his death, and the mother of their two children. (*Id.* at ¶ 4.) Urbach resides in the City of Parma, also in Cuyahoga County, Ohio. (*Id.*) Defendants Matthew Craska ("Craska") and David Mindek ("Mindek") are police officers for the City of Cleveland, Ohio. (*Id.* at ¶¶ 5-6.) Defendant City of Cleveland is a municipal corporation located in Ohio. (*Id.* at ¶ 7.)

On July 3, 2011, Ficker and Urbach and their two minor children attended a Fourth of July party at Kimberly Mindek's house in Cleveland, Ohio. (*Id.* at ¶ 10.) Kimberly Mindek is David Mindek's wife, as well as Urbach's cousin. (*Id.* at ¶¶ 10-11.) Ficker, Urbach, and their children left the party in the late afternoon, and proceeded to go to Urbach's parents' house in Strongsville, Ohio, where they remained for several hours. (*Id.* at ¶ 12.) In the evening, Urbach and Ficker left their children at her parents' house, and went to a local bar for a short time. (*Id.* at ¶ 18.)

Sometime after the party, Kimberly Mindek suspected that Ficker stole some jewelry from an upstairs bedroom while he was at the party. (*Id.* at ¶ 13.) She told her husband of her suspicion when he returned home later from his shift as a patrol officer. (*Id.* at ¶ 14.) Mindek then enlisted the assistance of Craska, who was on duty in the Second District area of Cleveland, in order to confront Ficker at his home in Parma. (*Id.* at ¶ 15.) At approximately 11:30 p.m., Craska left his assignment on the near West Side of Cleveland, picked up Mindek in his police cruiser, and drove

---

[1] Urbach brings this action with respect to Count Six only ("Infliction of Emotional Distress" under Ohio law).

to Ficker and Urbach's home, around seven to ten miles away. (*Id.* at ¶ 16.) Mindek and Craska arrived at Ficker and Urbach's home and waited for them to arrive. (*Id.* at ¶ 17.) Mindek and Craska did not have a warrant for Ficker's arrest. (*Id.*)

When Ficker and Urbach returned home, they parked their car in the driveway, exited the vehicle, and proceeded toward the side door of their house when Urbach noticed a police car with Mindek, in civilian clothes, and Craska, in uniform, standing in the vicinity. (*Id.* at ¶ 20.) At that time, Defendants confronted Ficker, forced him face first on the hood of Craska's police cruiser, began to handcuff him, and proceeded to beat him and electronically shock him. (*Id.* at ¶ 21.) Ficker cried for help while attempting to thwart the numerous blows to his body. (*Id.* at ¶ 22.) Mindek and Craska did not show a warrant for Ficker's arrest, and did not observe him engaged in any criminal activity. (Pls.' Resp. at 6, ECF No. 13.) At some point, Ficker was able to break free, put his hands in the air to show he was unarmed, and attempted to get in the side door of his house. (Compl. at ¶ 24.) Craska then fired a shot at Ficker before he could reach his door, striking him in the side of his chest, under his armpit. (*Id.*) The shot traversed through his chest, and severed his spinal cord. (*Id.*) According to the autopsy report, Ficker suffered approximately thirty (30) separate wounds, including multiple contusions from blunt force on his body. (*Id.* at ¶ 23.) Meanwhile, Urbach called both the Parma Heights and Parma Police Departments to seek help for Ficker. (*Id.* at ¶ 25.) Craska and Mindek fled the scene shortly after. (*Id.* at ¶ 26.) Members of the Parma Police Department were notified by 911 of the shooting, and arrived to find Ficker mortally wounded outside his home, unarmed. (*Id.* at ¶ 27.) Ficker died later as a result of the gunshot wound fired by Craska. (*Id.* at ¶ 28.)

## II. STANDARD

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009), clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. LEGAL ANALYSIS

Defendant City of Cleveland's Motion seeks dismissal of Plaintiffs' claims for: (1) violation of Ficker's constitutional rights under 42 U.S.C. § 1983 through the City's failure to properly supervise, monitor and train officers to deal with potential constitutional violations; and (2) state law claims, including wilful, wanton, reckless conduct; assault and battery; false arrest; infliction of emotional distress; wrongful death; and a survivorship action. The court addresses each claim in turn.

#### A. Constitutional Violations

Defendant City of Cleveland argues that Plaintiffs have failed to allege facts sufficient to show that the City failed to train/supervise or failed to implement a policy regarding the alleged constitutional violations suffered by Ficker at the hands of Mindek and Craska. (Def.'s Mot. to Dismiss at 5-13, ECF No. 6.) Defendant contends that Plaintiffs simply state the legal conclusion that because of the alleged constitutional violations, the City must have failed to train/supervise its officers in understanding constitutional limitations on their work, but that they failed to provide any operative facts to support these legal conclusions. (*Id.*) The City argues that Plaintiff's inference of a failure to train/supervise based on the events in question does not meet the "plausibility" standard under *Twombly* and *Iqbal*. (*Id.*) Plaintiffs argue that they need only plead a constitutional violation and allege that the violation was caused by an official policy or custom. (Pls.' Resp. at 14, ECF No.

5

13.) Plaintiffs argue that the actions taken by Mindek and Craska towards Ficker lead to a reasonable inference that the City failed to train its officers in understanding constitutional limitations, or failed to implement policies prohibiting such conduct by their officers. (*Id.* at 15.)

Municipalities may be held liable under 42 U.S.C. § 1983 for the unconstitutional violations of their employees where the municipality's "policy or custom" was the direct cause of the violation. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). However, where there is no underlying constitutional violation, a municipality cannot be held liable. *See Scott v. Clay County, Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("Nevertheless, our conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well."). To prevail on a claim against a municipality under § 1983, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the city's responsibility for that violation. *See Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2010) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). In general:

> there are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted). As detailed above, a plaintiff may show municipal liability under 42 U.S.C. § 1983 under a 'failure to train' theory. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1988). However, "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to

6

*deliberate indifference* to the rights of persons with whom the police come into contact." *Id*. (emphasis added). As the Sixth Circuit has stated, "the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be 'plainly obvious.'" *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)(citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

The Supreme Court's decisions in *Twombly* and *Iqbal* emphasized that a plaintiff must do more than allege facts allowing for a mere "possibility" that a defendant is liable for the conduct charged. The plausibility requirement is not a heightened pleading requirement, but "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Though the Sixth Circuit has yet to address the question, District Courts in this Circuit have uniformly found, in addressing dismissal of *Monell* claims, that the *Iqbal* plausibility requirement is not to be relaxed. *See, e.g., Hutchison v. Metropolitan Government of Nashville and Davidson, County*, 685 F.Supp.2d 747, 751 (M.D. Tenn. 2010); *Birgs v. City of Memphis*, 686 F.Supp.2d 776, 780-81 (W.D. Tenn. 2010).

The court finds Plaintiffs' arguments to be well-taken. Plaintiffs essentially allege that Mindek and Craska's actions amount to three separate constitutional violations: leaving their jurisdictional zone when going to Parma to confront Ficker, the seizure of Ficker without probable cause when they attempted to arrest him, and improper use of deadly force. (Compl. at ¶¶ 37-39, ECF No. 1-1.) The court first notes that, as Defendant City of Cleveland point out, leaving their jurisdiction was not a constitutional violation in and of itself. *See Howard*, 346 F. App'x at 51. As such, without an underlying constitutional violation, there can be no *Monell* liability based on this alleged action. *Heller*, 475 U.S. at 799. However, Plaintiffs are correct in alleging that Mindek and

7

Craska's attempt to arrest Ficker and the use of deadly force against Ficker constitute violations of the Fourth and Fourteenth Amendments of the United States Constitution. (Compl. at ¶ 32, ECF No. 1-1.) The Complaint goes into great detail as to the events surrounding Ficker's death, including the reasons why Mindek and Craska confronted Ficker and how Ficker was shot. The facts alleged, if true, would show that Ficker was "seized" for the purpose of the Fourth Amendment. Although he was never actually placed in handcuffs before the shooting, he would certainly not have felt free to walk away as he was being beaten and electronically shocked while bent over a car. *See United States v. Beauchamp*, 649 F.3d 560, 567 (6th Cir. 2011). Similarly, the facts would show that Ficker was killed by Craska, and the use of deadly force to apprehend a suspect also constitutes a "seizure" under the Fourth Amendment. *Zulock v. Shures*, 441 Fed. App'x 294, 302 (6th Cir. 2010) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). Therefore, Plaintiffs have adequately pled the underlying constitutional violations that form the first part of a *Monell* claim. *See Ellis*, 455 F.3d at 700.

Plaintiffs have also met their burden as to pleading the City's responsibility for these constitutional violations. *Id.* Plaintiffs do not rely on any "legislative enactments or official agency policies" or "actions taken by officials with final decision-making authority" to plead the City's liability in their Complaint. *Thomas*, 398 F.3d at 429. Instead, Plaintiffs allege that Mindek and Craska's actions resulting in Ficker's death were due either "a policy of inadequate training or supervision ... or a custom of tolerance or acquiescence of federal rights violations." *Id.* The court notes that Plaintiffs do not meet their pleading burden under *Iqbal* and *Twombly* regarding allegations of a "custom" of federal rights violations, as they only allege this one instance of misconduct. Plaintiff's Complaint simply states the facts surrounding the events that occurred

involving Mindek and Craska, then asks the court to infer from Mindek and Craska's actions that the had a custom of tolerating such abuses. The Complaint contains no facts regarding any other similar incidents of police misconduct that the City may have deliberately ignored. *See Birgs*, 686 F.Supp.2d at 780 ("The easiest way for an individual to meet her burden is to point to past incidents of similar police conduct that authorities ignored.") (citing *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005)). In order to properly plead a *Monell* claim under such a "custom" theory of liability, Plaintiffs need to allege more than one instance of the claimed constitutional violations. *Hutchison*, 685 F.Supp.2d at 751.

However, Plaintiffs have properly pleaded facts supporting the legal conclusion that the City "failed to train or supervise its officers, or that it failed to institute adequate policies and procedures governing ... the application of probable cause to make arrests, or the use of deadly force." (Compl. at ¶ 40, ECF No. 1-1.) *Monell* claims made under a "failure to train" theory do not necessarily require Plaintiffs to allege more than one instance of misconduct. *Harvey v. Campbell County, Tenn.*, 453 Fed. App'x. 557, 562-63 (6th Cir. 2011). Plaintiffs may "show deliberate indifference through evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id.* (citing *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)). For the purposes of the Rule 8 notice pleading standard after *Twombly* and *Iqbal*, district courts[2] in the Sixth Circuit have differed on what exactly must be alleged in order to adequately plead a *Monell* claim based on a "failure to train" theory. *Compare Dowling v. City of Barberton*, 2008 WL 4415931, at

---

[2] The Sixth Circuit itself has not addressed this specific question as of the date of this Order.

*3 (N.D. Ohio Sept. 24, 2008) ("Thus, to survive a motion to dismiss, a Monell plaintiff need only plead a constitutional violation and allege that the violation was caused by an official policy or custom.") *with Mitchell v. City of Hamilton*, 2012 WL 701173 at ¶ 5 (S.D. Ohio March 1, 2012) (dismissing *Monell* claim where plaintiff had only "pleaded facts concerning only a single set of wrongful acts towards him, not a policy or custom of inadequate training or supervision.").

The court notes that the "plausibility" standard articulated in *Twombly* and *Iqbal* makes it difficult for plaintiffs seeking to assert claims against municipalities under 42 U.S.C. § 1983 and *Monell*. To properly plead a *Monell* claim, a plaintiff needs to point to a municipality's existing policy or lack thereof, or compile instances of similar events to the ones forming the basis for the claim. More often than not, this information will be very difficult for a plaintiff to find without discovery. Though *Twombly* and *Iqbal* did not heighten pleading requirements above the notice pleading required by Rule 8 of the Federal Rules of Civil Procedure, the court, as other district courts have noted, is concerned that plaintiffs will find it difficult to make allegations rising to the level of plausibility without discovery, which possibly could turn away many meritorious claims. *Twombly*, 550 U.S. at 547 ("Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Hutchison*, 685 F.Supp.2d at 752 ("Although Plaintiff's Amended Complaint cannot survive the Motion to Dismiss after *Iqbal*, the Court must note that it is uncomfortable with this pleading standard as now applied, especially in the context of Section 1983 and municipal liability."). As such, the court finds that Plaintiffs have adequately pled their *Monell* claim under a "failure to train" theory. Plaintiffs have alleged in detail the constitutional violations committed by City employees Mindek and Craska, and have clearly stated in their Complaint that these violations were caused by Defendant City of

10

Cleveland's failure to adequately train its police officers in the application of probable cause to make arrests or the use of deadly force. (Compl. at ¶ 39, ECF 1-1.) Therefore, the court denies the City's Motion to Dismiss Plaintiffs' *Monell* claims.

### B. State Law Claims

Plaintiffs concede that Ohio Revised Code Chapter 2744 bars their state law claims against the City of Cleveland. Ohio Revised Code Chapter 2744 generally provides immunity from suit to political subdivisions for acts of an employee of such subdivision "in connection with a governmental or proprietary function." Ohio Rev. Code Ann. §2744.02(A) (West 2011). It does provide for certain exceptions, including in cases involving injury, death, or loss to person or property resulting from: (1) negligent operation of a motor vehicle by an employee of the subdivision; (2) negligent acts by such employees with respect to proprietary functions; (3) failure to keep public roads in repair or failure to remove obstructions from the roads; (4) negligence of employees on or within the grounds of public buildings; and (5) when liability is expressly imposed by another section of the Ohio Revised Code. Ohio Rev. Code Ann §2744.02(B). As Defendant City of Cleveland argues, and Plaintiff rightly concedes, Plaintiff's state law claims against the City of Cleveland are barred by Ohio Revised Code Chapter 2744 as they do not fall into any of the exceptions in Section 2744.02(B). Therefore, the court dismisses all of Plaintiff's state law claims against Defendant City of Cleveland.

## IV. CONCLUSION

For the foregoing reasons, the court hereby grants in part and denies in part Defendant City of Cleveland's Motion to Dismiss for Failure to State a Claim (ECF No. 6).

IT IS SO ORDERED.

                                          /s/ *SOLOMON OLIVER, JR.*
                                          CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT

August 6, 2013