IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BERNADETTE ROLEN, ADMIN., *et al*., | ) | CASE NO. 1:12 CV 01914 |
| | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, *et al*., | ) | |
| | ) | |
| Defendants. | | |

---

## DEFENDANT DAVID MINDEK'S MOTION FOR SUMMARY JUDGMENT

---

JOSEPH F. SCOTT (0029780)
Chief Assistant Director of Law
Room 106 - City Hall
601 Lakeside Avenue
Cleveland, Ohio 44114
(216) 664-2800
(216) 664-2663 (fax)
e-mail:  jscott@city.cleveland.oh.us

ATTORNEYS FOR DEFENDANT
DAVID MINDEK

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities .................................................................. iv

**Memorandum in Support of Motion for Summary Judgment**.............3

**I. Statement of the Case**............................................................3

**II. Statement of the Relevant Facts** ........................................4

**III. Applicable Law & Argument** ..............................................9

    A. Summary Judgment Standard....................................9

    B. David Mindek's Limited Use of Force Was Objectively
       Reasonable Under The Circumstances Present ........................9

    C. David Mindek Is Entitled To Qualified Immunity As
       Regards Plaintiffs' Federal Claims ...........................11

       1. Qualified Immunity Analysis ...............................11

       2. David Mindek's Limited Use Of Force Did Not
          Violate Any Clearly Established Constitutional Right......12

       3. David Mindek Is Entitled To Qualified Immunity
          Even If He Was Mistaken As To The Amount of
          Force Necessary To Subdue FIcker....................................13

    D. David Mindek Is Entitled To Summary Judgment As To
       Tiffany Urbach's Claims For Intentional Infliction Of
       Emotional Distress ...................................................13

    E. Mindek's Limited Use Of Force Was Not Willful,
       Wanton, And/or Reckless As Defined By
       O.R.C. 2744.03(A)(6)(b)...........................................14

    F. David Mindek Did Not Falsely Arrest Daniel Ficker............16

    G. Mindek's Limited Use Of Force Was Privileged And
       Did Not Constitute An Assault And Battery .........................17

**H. Mindek Is Entitled To Summary Judgment As To All Of Plaintiff's Remaining State-Law Claims** ........................18

    **1. Mindek Did Not Cause The Death of Daniel Ficker** .......18

    **2. Mindek Is Entitled To State Law Immunity Under O.R.C. 2744.03(A)(6)** ........................................................18

**IV. Conclusion** ........................................................................20

**Certificate of Service** .................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                          <u>Page</u>

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) ........................................9

*Anderson v. Massillon,* 134 Ohio St.3d 380 at ¶40 (2012) ..................14,15

*Binay v. Bettendorf,* 601 F.3d 640 (6th Cir. 2010) ....................................12

*Brown v. Denny, 72 Ohio App.* 3d 417 (2d Dist. 1997)............................13

*Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002)........................................9

*Caie v. W. Bloomfield Twp*., 485 F. App'x 92 (6th Cir. 2012) ..................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................9

*Cook v. Hubbard Exempted Village Bd. of Edn*., 116 Ohio App.3d
564 N.E.2d 1058 (11th Dist. 1996)...............................................................15

*Dunn v. Matatall*, 549 F.3d 348 (6th Cir. 2008)........................................10

*Fabrey v. McDonald Village Police Dept*. (1994), 70 Ohio St.3d 351......18

*Graham v. Connor*, 490 U.S. 386 (1989) ...................................................10

*Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505 (6thCir. 2012) ..11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...............................................12

*Hayes v. Columbus*, 2014 WL 2048176 (Ohio App. 10 Dist., 2014) ........18

*Hopson v. Daimler Chrysler Corp*., 306 F.3d 427 (6th Cir. 2002)..............9

*Jackson v. McDonald*, 144 Ohio App.3d 301 N.E.2d 24
(5th Dist. 2001) ...........................................................................................15

*Morrison v. Bd. of Trustees of Green Twp*., 583 F.3d 394 (6th Cir. 2009) 12

*Niessel v. Meijer, Inc*. Warren App. No. CA2001-04-027,
2001-Ohio-8645 ..........................................................................................17

*Pearson v. Callahan*, 555 U.S. 223 (2009) .................................................12

*Phung v. Waste Mgt., Inc*. 71 Ohio St.3d 408 (1994) ................................13

*Radvansky v. City of Olmstead Falls* (C.A.6, 2005), 395 F.3d 291 ..........17

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................12

*Scott v. Harris*, 550 U.S. 372 (2007) .........................................................12

*State v. Sells*, 30 O.L.A. 335 ......................................................................17

*VanDyke v. Columbus*, 10th Dist. No. 07AP-918, 2008-Ohio-2652 ¶13 ...15

*Williams v. City of Grosse Pointe Park*, 496 F.3d 482 (6thCir. 2007) ......10

*Yeager v. Local Union 20,* 6 Ohio St.3d 369 (1983) .................................14

### Ohio Revised Code

O.R.C. 2744.03 ................................................................................................1

O.R.C. 2744.03(A)(6) .....................................................................................18

O.R.C. 2744.03(A)(6)(a)-(c) ...........................................................................19

O.R.C. 2744.03(A)(6)(b) ................................................................................14

42 U.S.C. 1983 ..............................................................................................3,11

### Federal Rules of Civil Procedure

Rule 56 ...........................................................................................................1,9

Rule 56(e) .........................................................................................................9

### Miscellaneous

4 American Jurisprudence, 54, § 77 ................................................................17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BERNADETTE ROLEN, ADMIN., *et al.* | ) |
| | ) CASE NO. 1:12 CV 01914 |
| -Plaintiffs | ) |
| | ) JUDGE SOLOMON OLIVER, JR. |
| -vs- | ) |
| | ) DEFENDANT DAVID |
| | ) MINDEK'S MOTION |
| CITY OF CLEVELAND, *et al.* | ) FOR SUMMARY JUDGMENT |
| | ) |
| -Defendants | ) |
| | ) |

Defendant David Mindek respectfully requests that his Court grant him summary judgment as to all pending claims pursuant to F.R.C.P. 56.  There are no genuine issues of material fact and this Defendant is entitled to judgment as a matter of law.  David Mindek used reasonable, non-deadly force in attempting to assist Cleveland police office Craska in arresting Daniel Ficker after Ficker attacked Craska.  Mindek's use of force was limited to manipulating Ficker's legs, hands, and arms as Mindek attempted to halt Ficker's assault on Craska.  None of the force used by Mindek could be deemed excessive under the rapidly evolving events with which Mindek was presented.

Mindek is also entitled to state-law immunity under O.R.C. 2744.03 from Plaintiffs' state-law claims.  Plaintiffs cannot establish any exception to state-law immunity.  Further, as to Plaintiff Urbach, Plaintiff cannot satisfy any of the necessary elements for her claim of intentional infliction of emotional distress. The grounds for this motion for summary judgment are more fully set forth in the attached memorandum.

1

Respectfully submitted,

**BARBARA A. LANGHENRY (0038838)**
Director of Law

s/ Joseph F. Scott_____
**JOSEPH F. SCOTT (0029780)**
Chief Assistant Director of Law
Department of Law, Cleveland City Hall
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Telephone No.:  (216) 664-2800
Facsimile No.:   (216) 664-2663
jscott@city.cleveland.oh.us
*Counsel for Defendant David Mindek*

2

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.        Statement of the Case.

 This action was instituted by Plaintiff Bernadette Rolen as the Administratrix of the Estate of Daniel Ficker on July 3, 2012 by the filing of Plaintiffs' complaint in the Cuyahoga County Court of Common Pleas.  Plaintiff Rolen seeks to recover damages allegedly owing the Estate of Daniel Ficker arising out of the events of July 3, 2011. Specifically, as regards Defendant David Mindek, Plaintiff Rolen asserts the following claims:

- First Claim For Relief—a claim brought pursuant to 42 U.S.C. 1983 for alleged use of excessive force;

- Third Claim For Relief—a state-law claim for alleged willful, wanton, and reckless conduct;

- Fourth Claim for Relief—a state-law claim for alleged assault and battery;

- Fifth Claim for Relief—a state-law claim for false arrest;

- Seventh Claim for Relief—a state-law claim for wrongful death; and

- Eighth Claim for Relief—as state-law survivorship claim.

Plaintiff Tiffany Urbach has separately asserted a single claim for Intentional Infliction of Emotional Distress.

 The undisputed facts demonstrate that there is no basis for any of Plaintiffs' claims as to David Mindek.  David Mindek did not violate the constitutional rights of Daniel Ficker when Mindek sought to assist Cleveland police officer Matthew Craska in stopping Ficker's aggression against Craska.  Further, Mindek did not act willfully, wantonly, and/or recklessly in his use of non-deadly force.  Mindek did not arrest Ficker

3

nor did Mindek engage in any conduct that would support Plaintiff Urbach's claim for intentional infliction of emotional distress. Mindek did not cause Daniel Ficker's death. Defendant Mindek is entitled to summary judgment as to each of Plaintiffs' federal and state-law claims.

## II.     Statement of the Relevant Facts.

### *Property Is Discovered Missing From The Mindek Residence.*

Plaintiffs' complaint reflects the general background of events leading up to the events of July 3, 2011 that occurred outside Tiffany Urbach's Parma, Ohio residence. Kim Mindek, the wife of David Mindek and cousin of Tiffany Urbach, held a Fourth of July party at the Mindek's home. ECF 1-1, Complaint at ¶ 10. The party was attended by a number of guests including Tiffany Urbach and Daniel Ficker. ECF 39-4, Dep. of Tiffany Urbach at 30:1-25. The guests were assembled outside the home for the most part. The guests made use of the facilities inside on the first floor of the Mindek's residence. However, Kim Mindek had requested that her guests not enter the upstairs portion of the residence. The only rooms located in the upstairs were Kim and David's bedroom and a second bathroom. ECF 39-2, Dep. of David Mindek at 28:2-4. Kim had expressly requested that the guests only use the bathroom on the first floor. Id. at 32:10-14.

At some point during the party Mrs. Mindek noticed Daniel Ficker coming downstairs from the second floor of the Mindek home (the area he had been specifically told not to enter). His behavior appeared suspicious. Urbach and Ficker left the party shortly after Mrs. Mindek discovered Ficker exiting the upstairs. Mrs. Mindek subsequently discovered the money and jewelry had been taken from the upstairs

4

bedroom.  She called her husband to tell him of the missing property.  Id. at 25:3-10; 26:2-8; and 27:10-12.

David Mindek was at work at the time he received his wife's call. He requested to leave work early and immediately drove home.  Id. at 30:23-25.  After discussing the missing property with his wife, David Mindek called Cleveland police officer Matthew Craska to report the crime.  Craska responded to the Mindek's home.  He subsequently requested permission from his supervisor to travel to Parma for the purposes of interviewing Daniel Ficker about the missing property.  David Mindek accompanied Craska.   As the victim of the crime, Mindek believed he could be of assistance in identifying his property. Id. at 52:5-6.

### Craska and Mindek Arrive At Tiffany Urbach's Residence After Securing Permission From Craska's Supervisor.

Craska and Mindek arrived on scene and knocked on the front and side doors of the house to no avail.  ECF 39-1, Dep. of Matthew Craska at 104:8-17.  At that point, Tiffany Urbach and Daniel Ficker returned home pulling into the driveway.  Id. at 104:8-17.  Urbach was driving and Ficker was the passenger.  ECF 39-4, Dep. of Tiffany Urbach at 54:5-11.  Craska approached the passenger side while Mindek approached the driver side.  Id. at 58:18-21.

Urbach got out of the car and approached David Mindek.  ECF 39-2, Dep. of David Mindek at 55:10-16; Dep. of Tiffany Urbach at 64:8-18.  Craska noticed Ficker was highly intoxicated. ECF 39-1, Dep. of Matthew Craska at 102:6-8; ECF 39-5, Cuyahoga County Toxicology Laboratory Report of Daniel Ficker; ECF 39-6, Metro General Hospital response to Subpoena to Produce Blood/Alcohol Records of Daniel Ficker.  Craska, knowing what Mindek told him about Ficker's criminal history, wanted

to pat Ficker down for officer safety.  ECF 39-1, Dep. of Matthew Craska at 101:22 –
102:1; 108:19-25; and 119:5-17.

      While Craska approached Ficker, Mindek approached Tiffany Urbach . ECF 39-2,
Dep. of David Mindek at 57:16 – 58:4.  After Mindek explained to Urbach why the two
officers were there, Urbach angrily shouted permission to search both the car and the
house for any stolen property.  Id. at 58:25 – 59:7; ECF 39-4, Dep. of Tiffany Urbach at
72:12-15.

      Craska heard Urbach consent to a search, and wanted to safely search the car and
the home for the missing property, the underlying focus of the Second District criminal
complaint by the Mindeks.  ECF 39-1, Dep. of Matthew Craska at 102:13 – 103:2;
105:11-20; 108:19-25; 121:16-22; 124:10-11; and 125:7-15.  However, Craska did not
believe he could safely search the premises with an intoxicated, and now belligerent,
Ficker – a person Craska reasonably believed to have a felonious past including a
weapons charge and thus could be potentially dangerous, due to the information relayed
by Mindek – unless Ficker were briefly detained for officer safety.  Id. at 101:22 – 103:2;
105:11-20; 108:19-25; 119:5-17; 121:16-22; and 125:7-18.

      Ficker would not go to Craska's zone car voluntarily, but also did not yet begin
to actively resist, so Craska walked Ficker to his zone car to pat Ficker down.  Id. at
116:1-11 and 118:1-5; ECF 39-2, Dep. of David Mindek at 58:10-19.
Craska clearly stated to Ficker he was not under arrest.  ECF 39-1, Dep. of Matthew
Craska at 119:5-17; 121:11-15; and 125:1-3.  Craska patted Ficker down and found a
knife and tossed it away for safety purposes.  Id. at 121:24-25 and 124:5-23.  Craska then

6

instructed Ficker to have a seat in the back of the zone car again telling Ficker he was not under arrest.   Id. at 121:23 – 122:6; 124:24 – 125:3; and 130:18-23.

### *Daniel Ficker Assaults Craska And Resists Arrest.*

Plaintiffs allege that the physical altercation between Daniel Ficker and the officers initiated with Ficker being placed on the hood of the cruiser. (ECF 1-1, Plaintiffs' complaint at ¶ 28).  Plaintiff Urbach confirms that David Mindek was not involved in this initial encounter.  Rather, Urbach testified that Ficker was pulled towards the cruiser by Craska.  ECF 39-4, Urbach dep. at 69:16-20.  Urbach witnessed Mindek still standing in the driveway by Urbach's car at this time.  Id. at 70:14-15; See also, ECF 39-2, Mindek dep. at 65:23 to 66:14.  Urbach could not describe any other interaction between Ficker and either of the officers after that point in time.

Officer Craska confirms that he initially took Ficker to the zone car, placed Ficker by the hood of the car, and began to pat Ficker down.  ECF 39-1, Craska dep. at 102:8-10.  During the pat down, Ficker continued to try to push off the car.  Id. at 102:9-11.  At this time, Craska also heard Urbach give the officer permission to search her car.  Id.  Urbach herself confirms that she gave permission for the search.  Urbach at 72:14-15.  Given Ficker's demeanor, Craska went to place Ficker in the cruiser so that Craska could perform he search. ECF 39-1, Craska dep. at 102:16-25.

When Craska instructed Ficker into the back seat of the zone car, Ficker – who had already been screaming and shouting and generally uncooperative (ECF 39-2, Dep. of David Mindek at 60:3-13 and 116:3-13) while visibly intoxicated – told Craska, "No, fuck you," and braced himself against the roof and door of the car to not allow Craska to seat him in the back seat. ECF 39-1, Dep. of Matthew Craska at 122:2-6; 130:18-24; and

138:24-25; ECF 39-2, Dep. of David Mindek at 60:23 – 61:6; 61:11-17; and 65:4-8.

Craska tried to lean into Ficker with his hip and nudge Ficker into the back of the zone

car, but Ficker's non-compliance continued.  Ficker then turned from non-compliant to

violent. ECF 39-1, Dep. of Matthew Craska at 139:2-4.

Ficker braced himself with one arm draped over the open car door and the other

on the car roof to avoid being placed in the car.  Id. at 122:4-6.   At this point, Mindek

had minimal physical contact with Ficker by grabbing Ficker's one arm and pulling it

down. ECF 39-2, Mindek dep. at 65:5-8.   Ficker became more aggressive towards

Craska.  Id. at 67:16-18.  Ficker struck Craska in the chest with his elbow.  Id.; See also,

ECF 39-1, Craska dep. at 139:5-8.  Ficker and Craska fell to the ground where the two

continued to wrestle.  Mindek held Ficker's legs in an effort to get Ficker turned over on

his stomach so that Ficker could be handcuffed.  ECF 39-2, Mindek dep. at 67:23 to 68:1.

Nonetheless, Ficker was able to get to his fight and continue to fight Craska.

Despite repeated warnings by Craska, Ficker refuses to stop his aggression.

Craska repeatedly warned Ficker that he would be tased if he did not stop.  ECF 39-1,

Craska dep. at 150:7-19.  Ficker refused to comply.  Craska fired his Taser at Ficker.

Ficker momentarily backed up, but then pulled the Taser prongs from his clothing as if

unaffected.  Id. at 154:3-11.  Mindek also testified that the Taser had no effect on Ficker.

ECF 39-2, Mindek dep. at 70:5-10.

Ficker continued to actively fight Craska.  While choking Craska for a second

time, Ficker attempted to go for Craska's gun. ECF 39-1, Dep. of Matthew Craska at

169:15-20, 170:15-24, 173:16-19.  Mindek shouted to Craska that Ficker was going for

his gun. Id. at 169: 15-20 and 170:15-24; ECF 39-2, Dep. of David Mindek at 82:5 –

83:9. Craska felt the flap on his holster had been opened and both he and Mindek put their hands on top of Craska's weapon in order to prevent Daniel Ficker from gaining control of the gun. ECF 39-2, Dep. of David Mindek at 82:5 – 83:9 and 93:2-4.  Mindek did not use any other force during the encounter.  The limited force used by Mindek was objectively reasonable.

### III.    Applicable Law & Argument.

#### A.  Summary Judgment Standard.

A court must grant summary judgment where there remain no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the party opposing the motion, that conclusion is adverse to that party.  *Burchett v. Kiefer*, 310 F.3d 937, 941 (6th Cir. 2002); *Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).  Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The materiality of a fact is determined by reference to substantive law.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.  *Anderson v. Liberty Lobby*, 477 U.S 242, 248 (1986).

### B.  David Mindek's Limited Use of Force Was Objectively Reasonable Under The Circumstances Present.

There are several rules of deference in assessing an excessive force claim. First, the Court must assess the reasonableness of the officer's action "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396 (1989). That means that the assessment of the reasonableness of the officers' conduct allows "for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97. The deference afforded to an officer reflects the requirement of "a 'careful balancing' of the individual interest in being free from unreasonable seizures and the important governmental interest in protecting the safety of its (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). Finally, the officer's "underlying intent or motivation" in using physical force is an irrelevant consideration. *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. peace officers and the public." *Williams v. City of Grosse Pointe Park,* 496 F.3d 482, 486 (6th Cir.2007)

The undisputed facts in this case, establish the objective reasonableness of Mindek's limited use of force.  Mindek's actions amounted to nothing more than joint and limb manipulations intended to assist Craska in stopping Ficker's aggression.  Ficker was not physical harmed by Mindek's use of force and no harm is alleged.

A police officer is privileged to use force against a suspect who resists arrest. *Dunn v. Matatall,* 549 F.3d 348, 354 (6th Cir.2008) (holding that when a suspect "appeared recalcitrant in complying with the Officer's commands," the officers involved "acted reasonably in attempting to neutralize a perceived threat" by forcibly pulling him

from his car and taking him to the ground).   Similarly, "[i]f a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." *Hagans v. Franklin Cnty. Sheriff's Office,* 695 F.3d 505, 509 (6th Cir.2012) (holding there was no Fourth Amendment violation where an officer used a taser to subdue a suspect who had to be wrestled to the ground and continued to resist arrest by kicking, screaming, and refusing to be handcuffed). This court has also held that tasing a suspect is not excessive force when the suspect refuses to move his hands from under his body so that officers could handcuff him. *See Caie v. W. Bloomfield Twp.,* 485 F. App'x 92, 96 (6th Cir.2012) (tasing a suicidal suspect once was not excessive force where the suspect spoke of provoking officers to use deadly force and ran away flailing his arms violently).

The force utilized by Mindek was similarly reasonable in response to Ficker's aggression and failure to comply with the officers' commands.  Viewing the events from Mindek's perspective, an objectively reasonable officer would have understood that Ficker was intent on actively fighting Craska.  Ficker repeatedly struck Craska, repeatedly headbutted Craska, and wrestled with the officer.  Ficker repeatedly refused to stop his aggression despite commands to do so.  Under such circumstances, Mindek's limited use of force did not constitute a violation of Ficker's constitutional rights.

### C.  David Mindek Is Entitled To Qualified Immunity As Regards Plaintiffs' Federal Claims.

#### 1.  Qualified Immunity Analysis.

A police officer is entitled to qualified immunity on a § 1983 claim if he is "performing discretionary functions" and his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity gives governmental officials protection "from undue interference with their duties and from potentially disabling threats of liability." Id. at 806. When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of establishing that the defendant is not entitled to the defense. *Binay v. Bettendorf,* 601 F.3d 640, 647 (6th Cir.2010).

The qualified immunity analysis involves a two-step inquiry, which may be undertaken in any order the Court chooses. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the Court must decide whether the facts, viewed in the light most favorable to the purportedly injured party, "show the officer's conduct violated a constitutional right." *Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, the Court decides "whether the right was clearly established ... in light of the specific context of the case." Id. (quoting *Saucier*, 533 U.S. at 201). In undertaking this inquiry, the Court "analyzes the subject event in segments." *Morrison v. Bd. of Trustees of Green Twp*., 583 F.3d 394, 401 (6th Cir.2009).

### 2.  David Mindek's Limited Use Of Force Did Not Violate Any Clearly Established Constitutional Right.

Daniel Ficker did not have a constitutional right to be free from the use of force where Ficker aggressively attached Craska and repeatedly refused to comply with Craska's lawful commands.  Plaintiffs cannot and do not dispute Ficker's aggression. Plaintiff Urbach does not deny that even she shouted for Ficker to stop his assault on Craska.  ECF 39-4, Urbach dep. at 101:4-6.  Under such circumstances, Mindek's limited use of force did not violate any clearly established right of Daniel Ficker.

3. **David Mindek Is Entitled To Qualified Immunity Even If He Was Mistaken As To The Amount of Force Necessary To Subdue Ficker**.

A police officer is still entitled to qualified immunity if he is mistaken as to the amount of force necessary to apprehend a suspect.  While the undisputed record establishes that Mindek only used a very limited amount of force, Plaintiffs' cannot dispute that Mindek's force was objectively reasonable even if mistaken.  Plaintiffs' complaint fails to identify any specific force utilized by Mindek as excessive.

It is clear that Plaintiffs initially sought to base their claims on an argument that the officers should not have travelled to Parma.  However, this Court has already ruled that no constitutional violation occurred based solely upon the fact that the confrontation occurred in Parma. ECF 29, Order of August 7, 2013 at p. 7 ("The court first notes that, as Defendant City of Cleveland point out, leaving their jurisdiction was not a constitutuional violation in and of itself.") Beyond Plaintiffs' initial flawed premise, Plaintiffs fail to specifically identify any particular force used by Mindek as being excessive.

D.  **David Mindek Is Entitled to Summary Judgment As To Tiffany Urbach's Claims For Intentional Infliction Of Emotional Distress.**

To establish a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant intended to cause the plaintiff serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt. Inc.,* 71 Ohio St.3d 408, 410 (1994).  "Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct." *Brown v. Denny,* 72 Ohio App.3d 417, 423 (2d Dist.1997). It is not enough that the defendant acted

13

with intent to cause emotional distress. Liability will be found only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 374 (1983).

Plaintiff Urbach cannot meet any of the elements necessary to support a claim for intentional infliction of emotional distress.  First, Urbach's claim is premised on her witnessing David Mindek's involvement in his attempts to assist Craska in defending against Ficker's aggression.  Urbach does not claim nor does the evidence indicate that Mindek intended to cause Urbach any harm.  Thus, Urbach fails to meet the first element of her claim.

Urbach's claim further fails as there is no evidence that Mindek engaged in conduct that was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious, and utterly intolerable in a civilized society.  Mindek's limited use of force against Ficker involved limb and joint manipulations intended to stop Ficker's assault.  There is absolutely no basis for Urbach's claim for intentional infliction of emotional distress against Mindek.

### E.  Mindek's Limited Use Of Force Was Not Willful, Wanton, And/or Reckless As Defined By O.R.C. 2744.03(A)(6)(b).

Plaintiffs' seek to avoid the application of state-law immunity by alleging that Mindek's actions were either willful, wanton, and/or reckless, and therefore, within an exception to the general rule of immunity.  However, Plaintiffs' conclusory allegations are not supported by the evidence.

The terms used in R.C. 2744.03(A)(6)(b) "are not interchangeable." *Anderson v. Massillon,* 134 Ohio St.3d 380, at ¶ 40 (2012). Malicious purpose "means the 'willful and

14

intentional design to do injury, or the intentional or desire to harm another, usually seriously, through * * * unlawful or unjustified' conduct." *VanDyke v. Columbus,* 10th Dist. No. 07AP–918, 2008–Ohio–2652, ¶ 13, quoting *Cook v. Hubbard Exempted Village Bd. of Edn.,* 116 Ohio App.3d 564, 569, 688 N.E.2d 1058 (11th Dist.1996). "Bad faith denotes a 'dishonest purpose, moral obliquity, conscious wrong doing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' " *Id.,* quoting *Jackson v. McDonald,* 144 Ohio App.3d 301, 309, 760 N.E.2d 24 (5th Dist.2001). Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result. *Anderson* at paragraph three of the syllabus. Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Id.* at paragraph four of the syllabus.

Initially, it cannot be disputed that Mindek's actions were in fact lawful.  Mindek was coming to the assistance of another police officer (Craska) through his limited use of force.  Police officers are justified and privileged to use force in apprehending a suspsect. A police officer when meeting resistance while making a lawful arrest is justified in using sufficient force to subdue a prisoner although the officer is not acting in self defense and the officer's duty to use force is not limited to that amount of force necessary to protect himself, but extends to that amount of force reasonably necessary to perform the duty to arrest. In law a police officer duly empowered is not liable for injury by him in the use of reasonable and necessary force to preserve the peace and maintain order or overcome resistance to his authority. An officer in making an arrest is justified in using sufficient

15

force to subdue a prisoner although he is not acting in self defense. In considering this an officer attempting to make a lawful arrest is under no obligation to retreat or to retire to avoid the necessity of using extreme measures to prevent receiving great bodily harm. It is his duty to press forward for the accomplishment of his purpose within reasonable limits. The amount of force permissible to effect an arrest and the means employed are necessarily left to the sound discretion of the officer. The officer is not required to determine at his peril the precise amount of force necessary in each instance and to use that much and no more, but he may be guided by the reasonable appearance and the nature of the case and in determining the amount of force to be used.

There is no dispute that Mindek was assisting a fellow police officer when Mindek, manipulated Ficker's hand, attempted to hold Ficker's legs, attempted to handcuff Ficker, and prevented Ficker from gaining control of Craska's gun.  Again, Plaintiffs' do not allege nor do the undisputed facts indicate that Ficker sustained any physical harm as a result of Mindek's actions.  There is nothing in the records to support any allegation that Mindek acted in conscious disregard of any known risk of harm to Ficker.  In fact, the evidence establishes that Mindek's actions were aimed at stopping Ficker's aggression against Craska.  Plaintiffs' claim for willful, wanton, and reckless conduct is not supported by the evidence.  Mindek is entitled to summary judgment as to Plaintiffs' claim.

### F.   David Mindek Did Not Falsely Arrest Daniel Ficker.

There is no basis for Plaintiffs' claim of false arrest.  Plaintiffs cannot deny Ficker's aggression against Craska.  Plaintiffs cannot deny that Ficker repeatedly refused to comply with Craska's lawful commands throughout the encounter.  Claims of false

arrest are made by showing (1) the intentional detention of the person, and (2) the unlawfulness of the detention. See *Niessel v. Meijer, Inc.,* Warren App. No. CA2001-04-027, 2001-Ohio-8645. To establish a claim for false arrest, one must prove by a preponderance of the evidence that he was intentionally detained or confined without lawful privilege and against his consent. Because an arrest based on probable cause is a lawful detention, a finding of probable cause serves to defeat false arrest and false imprisonment claims. *Radvansky v. City of Olmstead Falls* (C.A.6, 2005), 395 F.3d 291, 315.  In this case, the officers had probable cause to arrest Ficker for his assault on Craska.

Plaintiffs' claim for false arrest against Mindek must also fail as Mindek never arrested Ficker.  It is undisputed that Ficker was never restrained by any force applied by Mindek.  Mindek is entitled to summary judgment as to Plaintiffs' claim for false arrest.

### G.   Mindek's Limited Use of Force Was Privileged And Did Not Constitute An Assault And Battery.

In *State v. Sells*, 30 O.L.A. 335, the court, quoting from 6 C.J.S. Assault and Battery, § 23, p. 825, said at pages 357 and 358, that: "A peace oficer duly empowered is not liable for injuries inflicted by him in the use of reasonably necessary force to preserve the peace and maintain order, or to overcome resistance to his authority. Thus an officer making an arrest is justified in using sufficient force to subdue the prisoner although not acting in self defense."  "An officer attempting to make a lawful arrest for a misdemeanor is under no obligation to retreat or retire to avoid the necessity of using extreme measures to prevent receiving great bodily injury. It is his duty to press forward for the accomplishment of his purpose."  4 American Jurisprudence, 54, § 77.  In this case,

Mindek's use of force was privileged, and therefore, cannot form the basis for Plaintiffs' claim of assault and battery.

### H.  Mindek Is Entitled To Summary Judgment As To All Of Plaintiff's Remaining State-Law Claims.

#### 1.  Mindek Did Not Cause The Death Of Daniel Ficker.

Plaintiffs' remaining state-law claims for wrongful death and state-law survivorship claim fail as to Mindek.  Again, Plaintiffs' claims are premised entirely on Mindek's limited use of force at the Parma residence.  As with Plaintiffs' federal claims, Mindek's use of force as to Plaintiffs' state-law claims "must be judged objectively at the time that force was employed, and without regard to motivation or intent."  *Hayes v. Columbus*, 2014 WL 2048176 (Ohio App. 10 Dist.,2014).  Mindek did not cause the death of Daniel Ficker and any limited force Mindek used during the encounter was justified.

#### 2.  Mindek Is Entitled To State Law Immunity Under O.R.C. 2744.03(A)(6).

Ohio Revised Code Chapter 2744 specifically grants immunity to employees of political subdivisions for negligence claims arising out of the course and scope of the person's employment with the political subdivision. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 357.  Specifically, R.C. § 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability unless one of the following exceptions applies:

> i.   The employee's acts or omissions were manifestly outside the scope of his employment;

  ii.  The employee's acts or omissions were with malicious purpose, in

     bad faith, or in a wanton or reckless manner; or

  iii.  Civil liability is expressly imposed by a section of the Revised

     Code.

Ohio Rev. Code § 2744.03(A)(6)(a)-(c).

  In this case, Plaintiffs allege that Mindek was acting under color of law pursuant to his employment as a City of Cleveland police officer. ECF 1-1, Complaint at ¶ 6. Plaintiffs cannot establish any of the exceptions to immunity as to Mindek. As discussed above, Mindek's actions were not willful, wanton, or reckless. Mindek did not act in bad faith, but rather came to the aid of a fellow officer as he was duty bound. All of Mindek's actions are covered by statutory immunity as provided in O.R.C. 2744.03.

**IV.     Conclusion.**

In light of the foregoing, Defendant David Mindek respectfully submits that he is entitled to summary judgment as to all of the Plaintiffs' federal and state-law claims. Mindek did not violate Daniel Ficker's civil rights.  The limited use of non-deadly force that Mindek employed in an attempt to assist Craska and stop Ficker's assault on Craska was reasonable.  Ficker did not have a right to be free from Mindek's use of force while Ficker continued his aggression against Craska.  Plaintiffs' state-law claims likewise fail, as Mindek's actions were both reasonable and justified under the circumstances.

Respectfully submitted,

**BARBARA A. LANGHENRY (0038838)**
Director of Law

s/ Joseph F. Scott_____
**JOSEPH F. SCOTT (0029780)**
Chief Assistant Director of Law
Department of Law, Cleveland City Hall
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Telephone No.:  (216) 664-2800
Facsimile No.:   (216) 664-2663
jscott@city.cleveland.oh.us
*Counsel for Defendant David Mindek*

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Defendant David Mindek's Motion for

Summary Judgment and Memorandum in Support was filed electronically on June 2,

2014.  Notice of this filing will be sent to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

 s/ Joseph F. Scott_____
 JOSEPH F. SCOTT (0029780)

___