IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BERNADETTE ROLEN, Individually and as Administratix of the Estate of Daniel Ficker, et al. | ) ) ) | CASE NO. 1:12-cv-1914 |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT CITY OF CLEVELAND

Defendant City of Cleveland ("City") respectfully moves this court pursuant Rule 56 of the Federal Rule of Civil Procedure for summary judgment on plaintiffs' § 1983 claim against the City as a matter of law. Summary judgment should be granted on the § 1983 claim asserted in the Second Claim for Relief (Governmental Liability) because there is no evidence of deliberate conduct by the City that constitutes a custom, policy, or practice that was the moving force behind the alleged violations of Daniel Ficker's constitutional rights. A Memorandum in Support is attached and expressly incorporated.

Respectfully submitted,

BARBARA A. LANGHENRY (0038838)
Director of Law


By:     *s/ Alejandro V. Cortes*
        ALEJANDRO V. CORTES (0079806)
        Assistant Director of Law
        SHAWN M. MALLAMAD (0011398)
        Assistant Director of Law
        City of Cleveland Department of Law
        601 Lakeside Avenue, Room 106
        Cleveland, Ohio  44114
        Tel: (216) 664-2800   Fax: (216) 664-2663
        Email:  ACortes@city.cleveland.oh.us
                SMallamad@city.cleveland.oh.us

        *Attorneys for Defendant City of Cleveland*

2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BERNADETTE ROLEN, Individually | ) | CASE NO. 1:12-cv-1914 |
| and as Administratix of the Estate of | ) | |
| Daniel Ficker, et al. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT CITY OF CLEVELAND

### ISSUE PRESENTED

Municipal liability under 42 U.S.C. § 1983 must be predicated on the existence of a deficient policy or custom and cannot be imposed on the theory of *respondeat superior*.  Plaintiffs allege constitutional violations at the hands of Cleveland Police Officers Matthew Craska and David Mindek, but fail to identify any policy or custom that was the moving force behind the alleged violations.  Should Plaintiffs' § 1983 claim against the City be dismissed where there is no evidence of a constitutionally deficient municipal policy or custom, and where the training the City provides to its officers complies with the standards set by the State of Ohio.

### STATEMENT OF THE CASE

Plaintiffs Bernadette Rolen, the mother of Daniel Ficker and Administratix of his estate, and Tiffany Urbach, Daniel Ficker's girlfriend and the mother his children, commenced this case on July 3, 2012 in the Cuyahoga County Court of Common Pleas by filing a Complaint and naming the City and Cleveland Police Officers Matthew Craska and David Mindek as defendants.   Because the Complaint alleged federal law claims, the City removed this case to the United States District Court for the Northern District of Ohio on July 24, 2012.  (*See* Doc. 1, Notice of Removal, dated 7/24/2012.)

3

The City subsequently moved to dismiss the Complaint on September 7, 2012 under Federal Rule 12(b)(6) for failure to state a claim.  (*See* Doc. 6, Motion to Dismiss, dated 9/7/2012.)  After the matter had been fully brief, this Court granted the City's motion in part and dismissed all of the state law claims against the City under Ohio R.C. Chapter 2744 statutory immunity.  (Doc. 29, Order, dated 8/7/2013, at p. 11.)  The Court, however, denied the City's motion with respect to the § 1983 claim.  (Id. at pp. 5-11.)

Nonetheless, the Court narrowed the scope of the § 1983 claims against the City.  In particular, this Court determined the City could not be liable under *Monell* for the actions of Mindek and Craska in leaving their jurisdiction because such action was not a constitutional violation.  (Id. at p. 7 (citations omitted)).  Further, the Court also determined that plaintiffs failed to allege sufficient facts to support their allegation that the City had a custom of acquiescing to federal civil rights violations.  (Id. at pp. 8-9 (citations omitted)).

The Court determined that plaintiffs alleged sufficient facts to support their legal conclusion that the City failed to train, supervise, and institute adequate policies and procedures relative to the application of probable cause to make arrests and/or the use of deadly force and permitted this claim to proceed to discovery.  (Id. at pp. 9-11.)  Based on this Court's ruling, this is the only claim left pending against the City, and the City now moves for summary judgment on this claim as a matter of law.  As will be addressed, there is simply no evidence in the record to support a finding that the City is liable under § 1983 under a failure to train, supervise, and institute adequate policies and procedures theory of liability.

## STATEMENT OF THE FACTS

The City adopts by reference the statement of undisputed facts presented by Officer Mindek and Officer Craska in their separate motions for summary judgment.  The City incorporates those facts here for the purpose of completion only and not for the purpose of ruling

4

on their motion for summary judgment.  Indeed, the details of the encounter between the two

officers and Daniel Ficker are not material to the claims against the City.  The City offers the

following additional facts:

**A.      The City has written policies prohibiting excessive force.  Officers receive use-of-force training, as well as training on the subject of probable while in the police academy; and are required to participate in annual use-of-force and firearm training.**

The City of Cleveland has explicit written policies prohibiting officers from using

excessive force while performing their duties.  One policy in particular is contained in General

Police Order ("G.P.O.") 2.1.01, which defines deadly and non-deadly force, defines "objectively

reasonable" force, and provides specific guidelines for the use of force on an action-response

continuum.  (*See generally* G.P.O. 2.1.01, attached as Exhibit A-4 to the Declaration of Johnny

E. Hamm, attached as Exhibit A.)  Under the version of G.P.O 2.1.01 in effect on July 3, 2011,

officers "shall use only the force that reasonably appears necessary to effectively bring an

incident under control while protecting the life of the member and others." (Id. at p. 1.)  G.P.O.

2.1.01 emphasizes and stresses to officers "that the use of force is not left to the unregulated

discretion of the involved member." (Id.)  The use of force "is not a subjective determination."

(Id.)  Rather, "[t]he use of force must be objectively reasonable. (Id.)  All City of Cleveland

police officers are expected to be guided in their actions by "a reverence for human life." (Id.)

In addition to providing guidelines concerning the use of force, G.P.O. 2.1.01 requires

that all officers receive annual training and testing on the use of force, appropriate methods to

effect arrests, apprehension of fleeing subjects, and their understanding of the G.P.O.  (Id.)

Officers are specifically trained on the constitutional limits on the use of deadly force during the

Cleveland Police Academy and annually thereafter through in-service training.  (Declaration of

Brandon Kutz, at ¶ 4 attached as Exhibit B.)  Officers also receive firearm training as cadets, and

annually thereafter. (Id. at ¶ 5.) Firearm training is mandated by the Police Academy and administered through the Cleveland Shooting Range. (Id.) This firearm training for cadets and officers includes "shoot — don't shoot" training on the Fire Arm Training Simulator ("F.A.T.S.") machine. (Id.) In addition to the use of force and firearm training, recruits also receive training on the subject of probable cause to make arrests, including the elements necessary to establish probable cause as well as limitations on detaining an individual suspected of committing a crime. (Id. at ¶ 6.)

Further, City policies require all officers to uphold all laws of the nation, the state, and the city. The Oath of Office sworn to by each police officer requires him or her to

> [S]upport the Constitution of the United States, the Constitution and the Laws of the State of Ohio, the Charter and Ordinances of the City of Cleveland; obey the rules, regulations and orders of the Division of Police of the City of Cleveland.

(Oath of Office, *Manual of Rules and Regulations for the Conduct and Discipline Of Officers and Employees 2000*, at p. 4, attached as Exhibit A-5 to Hamm Declaration.)

Similarly, Rule 2.01 of the Manual of Rules and Regulations for the Conduct and Discipline of Officers and Employees of the Division of Police states as follows:

> Personnel shall not violate any law of the United States, the State of Ohio, Charter provision or ordinance of the City of Cleveland, or neglect to perform any duty required by law, nor shall they engage in any conduct that would constitute a crime under the laws of the United States, the State of Ohio, or the Charter provisions or ordinances of the City of Cleveland.

(Exhibit A-5, Rule 2.1, *Manual of Rules and Regulations*, at p. 10.)

**B.     The City has written policies concerning the investigation of uses of force and of alleged officer misconduct.**

The City's policies provide a comprehensive system for multi-layer supervision and investigation of use-of-force incidents involving its police officers. G.P.O. 2.1.01 provides guidelines for the investigation of each incident of non-deadly and deadly force. In the case of

deadly force, G.P.O 2.2.01 provides protocols for the officer and immediate supervisor involved. (Exhibit A-4, G.P.O. 2.1.0, at pp. 9-10.)  A thorough investigation is then conducted by the Use of Deadly Force Investigation Team (U.D.F.I.T).  G.P.O. 1.1.22 concerns the role and composition of U.D.F.I.T.  (*See* G.P.O. 1.1.22, attached as Exhibit A-1 to Hamm Declaration.) This team is charged with investigating shootings by or of police officers.  (Id. at p. 1.)  The team is led by the Officer In Charge of the Homicide Unit and is comprised of other officers from the Homicide Unit (responsible for investigating police-involved shootings and felonious assaults upon officers), as well as officers and civilians from the Technical Section (responsible for gathering, photographing, and analyzing physical evidence), and supervisors from the Internal Affairs Unit (responsible for investigating potentially felonious behavior by officers).  (Id.)

The Internal Affairs Unit is charged with monitoring investigations into all use-of-deadly-force incidents, incidents where there is potential criminal conduct on the part of the officer involved (including those forwarded to the Internal Affairs Unit by the Office of Professional Standards), and any other assignment by the Chief.  (Declaration of Bruce Cutlip at ¶ 4 attached as Exhibit C; Policy Statement, *Internal Affairs Investigator's Policy and Procedure Manual*, at p. 6, attached as Exhibit C-1 to Cutlip Declaration.)  Use-of-deadly-force incidents are fully investigated by members of the U.D.F.I.T., which includes supervisors from the Internal Affairs Unit who simultaneously monitor the integrity of the UDFIT investigation.  (Exhibit C, Cutlip Declaration, at ¶ 5.)

The U.D.F.I.T. file is then turned over to the Internal Affairs Unit for review for possible criminality and administrative violations.  (Id. at ¶ 6.)  All use of deadly force investigations and investigations into incidents where there is potential criminal conduct on the part of the officer involved are forwarded to the Prosecutor's Office to review for possible criminal charges.  (Id.)

If no criminal charges are issued, the file is returned to the Internal Affairs Unit to determine if departmental charges should nonetheless be brought against the involved officer based on the officer's conduct.  (Id. at ¶ 7.)

The City's written policies provide for the investigation of citizen complaints against Cleveland police officers, as set forth in Chapter 25 of the City Charter and in G.P.O. 1.3.15. (City of Cleveland Charter, Chapter 25 §§ 115 through 115-4, attached as Exhibit D; G.P.O. 1.3.15, Exhibit A-2 to Hamm Declaration.)  The investigation of citizen complaints is reviewed by potentially four different bodies: (1) the Office of Professional Standards (OPS), which is not under the Division of Police and reports directly to the Director of Public Safety, (Exhibit D, City Charter, at § 115-1); (2) the citizen Police Review Board, which is a panel of private citizens appointed by the mayor, (Id. at § 115-2); (3) the Internal Affairs Unit; and (4) at that the time of this incident, the City of Cleveland Prosecutor's Office.

Supervisors assigned to the O.P.S. conduct an investigation into each citizen complaint. (Exhibit A-2, G.P.O. 1.3.15, at p. 3.)   If O.P.S. suspects that the officer's conduct involves potential criminality, the OPS must forward the complaint and its investigation to the Internal Affairs Unit for further investigation.  (Exhibit D, City Charter § 115-4; Exhibit A-2, G.P.O. 1.3.15, at p. 3.)  In addition, the citizen Police Review Board reviews citizen complaints with the help of the O.P.S. investigative packet.  (Exhibit D, City Charter §§ 115-3, 115-4.)

## ARGUMENT

### A.    Standard of Review

"When a motion for summary judgment is made and supported as provided in [Federal Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for

trial." Fed. R. Civ. P. 56(e).  The "mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995).  Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Here, summary judgment is appropriate because there are no genuine issues of material fact and the City is entitled to judgment as a matter of law on Plaintiffs' § 1983 claim.

**B.    The City is entitled to judgment as a matter of law on plaintiffs' § 1983claim because there was no violation of Daniel Ficker's constitutional rights, and because the City does not have a custom, policy, or practice that violated Daniel Ficker's constitutional rights.**

Under *Monell*, plaintiffs bear the burden of proving that the City *itself* caused the constitutional violation.  It is fundamental that a municipality cannot be held liable for the unconstitutional acts of its employees under a theory of *respondeat superior.  City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dep't of Social Service,* 436 U.S. 658, 694 (1978)).   Instead, a plaintiff seeking to establish municipal liability under § 1983 must "identify conduct properly attributable to the municipality itself." *Cherrington v. Skeeter,* 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).  Indeed, a municipality can only be liable under *Monell* if the injuries were caused by the "execution of a government's policy or custom, whether made by its

9

lawmakers or by those whose edicts or acts may fairly be said to represent official policy."
*Monell,* 436 U.S. at 694.  *See also Connick v. Thompson,* __ U.S. __, 131 S.Ct. 1350, 1359
(2011) (citations omitted) (Reaffirming the principle that municipalities are only responsible for
"their own illegal acts" and cannot be held vicariously liable under § 1983 for their employees'
actions.").

      Further, plaintiffs "must show that the municipal action was taken with the requisite
degree of culpability."  *Cherrington,* 344 F.3d at 645 (quoting *Board of Cty. Comm'rs of Bryan
Cty.,* U.S. at 404).  "A showing of deliberate indifference requires a showing of something more
culpable … than a negligent failure to recognize [a] high risk of harm."  *Sargi v. Kent City Bd. of
Educ.,* 70 F.3d 907, 912 (6th Cir. 1995) (citations omitted)).  *See also Lewis v. City of Irvine,
Kentucky,* 899 F.2d 451, 455 (6th Cir. 1990)  (It does not suffice "to prove that an injury or
accident could have been avoided if [the employee] had had better or more training, sufficient to
equip him to avoid the particular injury-causing conduct.").  Finally, plaintiffs "must
demonstrate a direct causal link between the municipal action and the deprivation of
constitutional rights."  *Cherrington,* 344 F.3d at 645 (quoting *Board of Cty. Comm'rs of Bryan
Cty.,* U.S. at 404).  A plaintiff must show that, through the municipality's deliberate conduct, the
unconstitutional conduct of the municipality itself was the moving force behind the alleged
injury.  *Id.*

      As discussed, the sole remaining claim against the City is based upon the City's alleged
failure to train, supervise, and institute adequate policies and procedures relative to the
application of probable cause to make arrests and the use of deadly force.  This is a legally
meritless claim.  Indeed, there is simply no support in fact or law for this claim and the Second
Claim of Relief fails as a matter of law.

1.    **Officer Mindek and Officer Craska did not violate Daniel Ficker's constitutional rights.**

Plaintiffs' *Monell* claim against the City fails because there is no underlying constitutional violation by Officer Mindek and Officer Craska.[1]  Daniel Ficker did not have a clearly established constitutional right to be free from the use of deadly where he refused to obey Officer Craska's commands, assaulted Officer Craska, and attempted to grab Officer Craska's firearm.  Without a constitutional violation, a court cannot impose liability upon a municipality under § 1983.  *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (*per curiam*); *Scott v. Clay County, Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000).  As the Supreme Court noted in *Heller*, "[i]f a plaintiff has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."  *Heller,* 475 U.S. at 799.  Because Officer Mindek and Officer Craska did not violate Daniel Ficker's constitutional rights, it follows that no policy of the City could have caused any violation of Daniel Ficker's constitutional rights.

2.    **The City did not fail to train or supervise its officers or institute adequate policies and procedures; nor is evidence of deliberate indifference, and no evidence that any deficiency in training or supervision was the moving force behind Daniel Ficker's death.**

Plaintiffs' *Monell* claim must also fail because the City did not violate Daniel Ficker's constitutional rights even if one were to assume that Officers Mindek and Craska violated his constitutional rights.  Again, plaintiffs bear the burden of proving that the City *itself* caused the constitutional violation.  The Sixth Circuit has formulated a three-part test which requires that "[t]o succeed on a failure to train or supervise claim [under a §1983 theory], the plaintiff must prove that (1) the training or supervision was inadequate for the tasks performed; (2) the

---

[1] The City refers the Court to the arguments set forth by defendants David Mindek and Matthew Craska in their respective motions for summary judgment.

inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006). In order to make this showing, the Sixth Circuit has held that a plaintiff must "do more than point to something the city could have done to prevent the unfortunate incident." *Kahlich v. City of Grosse Pointe Farms,* 120 Fed. Appx. 580, 585 (6th Cir. 2005) (citing *City of Canton,* 489 U.S. at 392 (citation omitted)).

> **a.** **The City did not fail to train or implement adequate policies and procedures relative the use of deadly force.**

Plaintiffs' claim relative to the use of force fails as a matter of law. The City has set forth affirmative Federal Rule 56 evidence establishing the adequacy of the City's training programs and policies regarding the use of force. It is undisputed that the City trains its officers in the use of force, including the use of deadly force, both at the Police Academy and throughout officers' careers with the City. Officers receive annual in-service training on the use of deadly force, including the constitutional limitations on the use of deadly force. In addition, it is undisputed that officers also receive annual firearm training. The sole evidence that plaintiffs have offered to support their claim against the City is the expert report of Melvin Tucker. Mr. Tucker, however, fails to express any opinion regarding the City's training, supervision, and policies regarding the use of force. *See generally* Expert Report of Melvin Tucker, dated 12/9/2013 attached as Exhibit E.)

> **b.** **The City did not fail to train or implement adequate policies and procedures relative to probable cause to make arrests.**

Likewise, plaintiffs' claim relative to the application of probable cause to make arrests fails as a matter of law as well. The City has presented the Court with evidence that police recruits are instructed on the subject of probable cause during their time at the Police Academy.

Specifically, recruits are instructed on the elements needed to establish probable cause, as well as limitations on detaining individuals suspected of committing a crime.

In support of this aspect of their claim, plaintiffs offer the expert report of Mr. Tucker who opined that "Cleveland Police Officers Matthew Craska and David Mindek were not properly trained on the concept of reasonable suspicion and did not have the level of proof necessary to reasonably suspect that Daniel Ficker had committed a crime." (Exhibit E, Opinion #2, Tucker Report, at p. 5.) Mr. Tucker's opinion regarding Officer Mindek and Officer's Craska's training is legally deficient and cannot establish an actionable *Monell* claim against the City as a matter of law. "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant,* 142 F.3d 898, 904 (6th Cir.1998).

In order to resolve the issue of the City's liability, the focus instead must be on the *adequacy of the training program* in relation to the tasks that the particular officer must perform. *City of Canton,* 489 U.S. at 390-91 (emphasis added). As the Supreme Court explained in the *City of Canton,* "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* (citations omitted). The Supreme Court stated further that

> It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* This deficiency in Mr. Tucker's expert report entitles the City to judgment as a matter of law on plaintiff's Monell claim relative to the application of probable cause to make arrests.

The City would still be entitled to dismissal of the claim even if one were to assume that the City's training program with respect to probable cause was inadequate because there is simply no evidence that any deficiency in the training program was the moving force that caused Daniel Ficker's death.  The Sixth Circuit has adopted the "segmented analysis" assessment that courts must utilize when determining the reasonableness of a police officer's seizure of an individual. *See e.g. Chappell v. City of Cleveland,* 585 F.3d 901, 909 (6th Cir. 2009).  "The proper approach under Sixth Circuit precedent is to view excessive force claims in segments.  That is, the court should first identify the 'seizure' at issue here and then examine 'whether the force used to affect the seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances." *Livermore ex rel. Rohm v. Lubelan,* 476 F.3d 397, 407 (6th Cir. 2007).  Irrespective of any errors that contributed to the circumstances, officers are entitled to defend themselves unless their perception is shown by some evidence not to have been reasonable. *See Chappell,* 585 F.3d at 915-16.

While *Chappell* and *Livermore* concerned denials of qualified immunity, the import of the Sixth Circuit's segmented analysis is applicable in the context of the *Monell* claim against the City.  Whether the City's training program relative to probable cause was inadequate is immaterial because the City's policies leading up the seizure of Daniel Ficker fail to demonstrate that the City itself was the "moving force" behind the injury—Daniel Ficker's death.  Simply put, there is no evidence establishing a direct causal link between the alleged policy of failing to train police officers on probable cause to make arrests and the death of Daniel Ficker. *See Mann v. Helmig,* 289 Fed.Appx. 845, 850 (6th Cir. 2008) (citation omitted)  ("[P]roof merely that such

14

a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact.").

> **c.** **There is no evidence establishing that the City was deliberately indifferent to the need for training relative to the use of force and probable cause to make arrests.**

Notwithstanding the fact that the City's training programs at issue here are not inadequate, plaintiffs' claim still fails because there is no evidence establishing that the City was deliberately indifferent to the need for training. First, there is no evidence of a clear and consistent pattern of misconduct by Officer Mindek or Officer Craska. Nor is there evidence of a clear and consistent pattern of misconduct by Cleveland police officers in general. Even if this evidence existed, there is no evidence that the City knew or should have known that the alleged pattern of misconduct constituted a high risk of harm and then deliberately ignored it.

Further, there cannot be a finding of deliberate indifference to a need for training where, as here, a municipality adheres to state standards for training. *See Johnson v. City of Milwaukee*, 41 F. Supp.2d 917, 931 (E.D. Wis. 1999) (citing *Tapia v. City of Greenwood*, 965 F.2d 336, 339 (7th Cir. 1992) (finding that a municipality's adherence to state training standards precluded a reasonable jury from hiding that the city's policymakers were deliberately indifferent to training). Here, the City's Police Academy is an approved and accredited school for the training of police officers where the training exceeds the requirements of Ohio's Peace Officers Training Certification Program (administered through the Ohio Peace Officers Training Academy. (*See* Exhibit B, Kutz Declaration, at ¶¶ 3, 7-8; G.P.O. 1.1.35, attached as Exhibit A-3 to Hamm Declaration.)

In support of their claim against the City, plaintiffs offer as "evidence" Mr. Tucker's

improper legal conclusion that the City was "deliberately indifferent."  It is firmly established, however, that an expert's opinions must be based on admissible facts, and cannot represent mere legal conclusions.  *See Cutlip v. City of Toledo*, 488 Fed.Appx. 107, 120 (6th Cir. 2012); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).  As the Sixth Circuit explained in *Berry*,

> Although an expert's opinion may embrace an ultimate issue to be decided by the trier of fact, the issue embraced must be a factual one.  The expert can testify, if a proper foundation is laid, that the Detroit Police Department was lax.  He could also testify regarding what he believed to be the consequences of the lax discipline.  *He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was deliberately indifferent to the welfare of its citizens*.

*Berry,* 25 F.3d at 153.  The same is equally true in this case.  Mr. Tucker cannot state that the failure of the police department to provide policy guidance to their officers on the limitation of their authority to take a law enforcement action outside the City limits demonstrated deliberate indifference.  *See* Exhibit E, Opinion # 3, Tucker Report at p. 7.

> **d.**     **There is no evidence that the City failed to adequate supervise its police officers.**

Finally, there is simply no evidence in the record that the City failed to adequately supervise its police officers or investigate possible misconduct.  The City has set forth evidence establishing a multi-tiered approach to the supervision of its officers, as well as for the investigation of officers whose actions may have violated the law or departmental regulations.  Mr. Tucker does not even offer any opinion as the City's policy of supervision.  (*See generally* Exhibit B, Tucker Report.)  Instead, Mr. Tucker offers his opinion on a *post-incident* agreement between the City and union representing Officers Mindek and Craska to stay any administrative or disciplinary proceedings until the conclusion of this litigation.  (Exhibit E, Opinion # 7, Tucker Report, at p. 10.)  Mr. Tucker opines that this agreement "demonstrates a deliberate indifference to the safety and well being of citizens of Cleveland that may come into contact with

officers Mindek and Craska in the performance of their duties and demonstrates a failure to properly supervise Mindek and Craska (by taking timely corrective action)."  (Id.)

Mr. Tucker's opinion is legally deficient for a number of reasons.  First, under the segmented analysis discussed above, any action taken by the officers due an alleged failure of the City to provide training prior to the seizure of Daniel Ficker is immaterial.  Second, there is no evidence demonstrating a causal link between this alleged inadequate policy and the injury.  In that regard, Mr. Tucker's own deposition testimony proves the futility of his opinion. Specifically, Mr. Tucker testified that this agreement does not impact Daniel Ficker and would only be relevant to an incident that happened *after* the agreement.  (Deposition of Melvin Tucker, at pp. 108-109 attached as Exhibit F.)

Indeed, post-incident conduct cannot be said to be the "moving force" that caused the violation.  *See e.g. Teare v. Independence Local School Dist. Bd. of Educ.,* No. 1:10–CV–01711, 2011 WL 4633105, *8 (Aug. 18, 2011 N.D. Ohio) (finding that accusation that a School Board failed to action upon learning of the complained of misconduct cannot reasonably be construed as the moving force behind the alleged constitutional violations.); *Tompkins v. Frost,* 655 F.Supp. 468, 472 (E.D. Mich. 1987) ("wrongful conduct after an injury cannot be the proximate cause of the same injury"); *Fox v. VanOosterum,* 987 F.Supp. 597, 604 (W.D. Mich. 1997) (argument that decision not to investigate, made after alleged violation took place, somehow caused that violation, defies logic); *Alexander v. Beale St. Blues Co., Inc.,* 108 F.Supp.2d 934, 949 (W.D. Tenn. 1999) ("[a]lthough ratification may tend to establish the existence of a policy of acquiescence that in itself was a 'moving force,' mere ratification of the conduct at issue by itself cannot legally suffice as a 'moving force.'").  As such, there is simply no basis in law to support Mr. Tucker's opinion in regards to the post-incident agreement between the City and the union.

17

**CONCLUSION**

For the foregoing reasons, Defendant City of Cleveland respectfully requests that the Court grant its motion for summary judgment and dismiss with prejudice plaintiffs' Complaint against the City.

Respectfully submitted,

BARBARA A. LANGHENRY (0038838)
Director of Law


By: *s/ Alejandro V. Cortes*
　　ALEJANDRO V. CORTES (0079806)
　　Assistant Director of Law
　　SHAWN M. MALLAMAD (0011398)
　　Assistant Director of Law
　　City of Cleveland Department of Law
　　601 Lakeside Avenue, Room 106
　　Cleveland, Ohio  44114
　　Tel: (216) 664-2800   Fax: (216) 664-2663
　　Email:  ACortes@city.cleveland.oh.us
　　　　　　SMallamad@city.cleveland.oh.us

　　*Attorneys for Defendant City of Cleveland*

## CERTIFICATION OF TRACK ASSIGNMENT AND
## COMPLIANCE WITH PAGE LIMITATIONS

The undersigned certifies that the case *Bernadette Rolen, Etc., et al. v. City of Cleveland, et al.* is currently on the standard track.  The undersigned certifies also that the above Memorandum In Support of Motion for Summary Judgment Filed by Defendant City of Cleveland complies with the page limitations set forth in Loc. R. 7.1(f).

s/ Alejandro V. Cortes
_____
ALEJANDRO V. CORTES (0079806)
Assistant Director of Law

19

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically on June 2, 2014.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*s/ Alejandro V. Cortes*
ALEJANDRO V. CORTES (0079806)
Assistant Director of Law